D. Arnold **SANDERSON**, Father and Administrator of the Estate of Steven D. Sanderson, Deceased for and on behalf of himself and Marjorie Sanderson, Mother of said Decedent, Appellant,

v.

Cecil C. **CHAPMAN** and Sarah G. Chapman, Appellees.

No. 71–2193.

United States Court of Appeals, Ninth Circuit.

Oct. 31, 1973.

Kenneth Biaett (argued), of Biaett & Bahde, Phoenix, Ariz., for appellant.

Warren E. Platt (argued), Roger W. Perry, of Snell & Wilmer, Phoenix, Ariz., for appellees.

## OPINION

Before ELY and HUFSTEDLER, Circuit Judges, and KELLEHER, District Judge.*

ELY, Circuit Judge:

The appellant, plaintiff below, instituted suit in an Arizona state court for the alleged wrongful death of his son. He sued in his capacity as administrator of the estate of his son, as well as in his individual capacity on behalf of himself and his wife, the mother of the deceased. The appellees, defendants below, removed the cause to the District Court, where jurisdiction existed by reason of the diversity of citizenship between the parties. Appellant's intestate was a twenty-one year old student at the University of Arizona. He died as the result of a collision between a Volkswagen automobile in which he was riding as a passenger and a Ford station wagon occupied by the husband and wife appellees and, at the time of the accident, being driven by the husband. The collision occurred near Quartzsite, Arizona, on U.S. Highway 60, a roadway generally extending in an east-west direction. The Volkswagen, owned and operated by one Jordan, was traveling west, and the Ford was traveling in the opposite direction, i. e., to the east. The collision between the automobiles was virtually head-on, and the asphalt roadway at the point was forty-three feet in width, with a broken white line in the center. There were four feet wide shoulders on each side of the highway, but, according to one of the investigating officers, inade-

---

* Honorable Robert J. Kelleher, United States District Judge, Los Angeles, California, sitting by designation.

quate for automobile travel, except at low speeds. Two of the occupants of the Volkswagen were apparently killed instantly, and the third, unconscious from the time of the accident, had died by the time he had been transported to a hospital.

It is undisputed that the vehicles collided on the north side of the road, the westbound lane properly occupied by the vehicle in which the decedent was riding. The defendant-appellees conceded this, but the defendant driver testified that the Volkswagen had veered to the eastbound lane, his lane, and, acting in the emergent circumstances, he turned into the eastbound lane in a last second, unsuccessful effort to avert the impact. Further, his testimony was to the effect that as he undertook to avoid the accident by veering to the left, the driver of the Volkswagen veered right, back into the westbound lane. The following testimony of the appellee husband summarizes the thrust of his and his wife's defense, i. e., that the driver of the Volkswagen was negligent and that his negligence was the sole proximate cause of the accident:

"Q. Getting back to the day of the accident, as you were driving east on Highway 10 and starting with the time when you first observed a Volkswagen on the highway approaching you, I want you to tell the jury, in your own words, what happened.

A. When we first saw the Volkswagen, it was a considerable distance ahead and he was on the left-hand side of the road, of my side. He gradually wandered or drifted back to his side.

Then, in between time, he drifted back to the other side. When he came back the second time, he kept going steadily to the right or to his left, to my right. And that's when I made up my mind I had to go to the left.

At the last minute, he turned over on my side.

Q. Mr. Chapman, why did you go to the left?

A. Well, it was really the only way out that I could see.

Q. In your judgment, was that what you thought might avoid the collision?

A. Yes, sir."

The above testimony was, to a considerable degree, corroborated by Officer Green, a patrolman of the Arizona Department of Public Safety, commonly designated as the Arizona Highway Patrol. Officer Green investigated the accident at the scene and signed the official accident investigation report. In that report appears the notation "The driver of vehicle No. 2 (the Ford) stated vehicle No. 1 (the Volkswagen) pulled into his lane and he was unable to avoid the collision." In Officer Green's testimony, we find the following:

"Q. So that Mr. Chapman, at the scene and just shortly after the accident, told you that he was unable to avoid the collision because the vehicle had pulled into his lane?

A. Yes, sir. He stated he could not understand why the car was in his lane."

After hearing all of the testimony and receiving the court's instructions, the jury returned a verdict in favor of the defendant-appellees. Judgment was entered in accordance with the verdict, the court denied the plaintiff-appellant's motion for new trial, and this appeal followed. We affirm.

■ The appellant argues, *inter alia*, that the verdict was contrary to the "great weight of evidence". This contention warrants no extended discussion. The existence of negligence, *vel non*, on the part of the driver of the Ford was a question of fact. It is apparent that the jury, which was the sole judge of the credibility of the witness, attributed credibility to the testimony of the appellee driver. The issues of negligence and proximate cause principally involve factual determinations, and we, like the district judge, are in no position to overturn the critical determinations of the jury in this case.

The principal contentions of the appellant relate to alleged errors concerning the instructions given by the court to the jury. First, the appellant argues that an instruction on the doctrine of *res ipsa loquitur* should have been given, to be applied in favor of the appellant. We do not agree. In the first place, one of the essential elements that is prerequisite to the application of the doctrine is that the instrumentality causing an injury be in the exclusive management or control of the defendant. Capps v. American Airlines, 81 Ariz. 232, 303 P.2d 717 (1956). Here, there were two instrumentalities, the two automobiles producing the accident, and only one was in the exclusive control and management of the defendant-appellees, or one of them.

Second, the Arizona courts have held that when a plaintiff in a negligence suit introduces specific evidence of the negligence of the defendant, as was done here, he need not, and cannot, invoke the doctrine of *res ipsa loquitur*. Throop v. F. E. Young & Co., 94 Ariz. 146, 382 P.2d 560 (1963).

Finally, even if we are mistaken in our interpretation of the applicable Arizona law in the respect under discussion, we conclude that the failure to give the instruction was, in the circumstances of this case, harmless. The court instructed the jury that it could presume from the fact that the Ford was on its "wrong" side of the road that the Ford's driver was negligent and that such presumption, having the force of law, should be applied unless the jury, from other evidence, was convinced to the contrary. In our view, this instruction was far more favorable to the appellant than would have been an instruction embodying the principles of *res ipsa loquitur*, raising a mere inference rather than the stronger presumption.

Next, the appellant contends that the jury should have been instructed, in effect, that any negligence on the part of the driver of the vehicle could not be imputed to the decedent. While such an instruction would have been proper, the court's failure to present it was, in this case, not prejudicial. The appellees' attorney never attempted, by insinuation or otherwise, to put forth the proposition that any negligence on the part of the Volkswagen driver was imputable to the decedent. In fact, the defense attorney stated explicitly: "First, the issue of contributory negligence is not in this case. We have offered no instructions on the subject, there has been no mention of any negligence or any claimed negligence on the part of plaintiff's decedent." Of more importance is the fact that the court instructed the jury: "It is no defense for a defendant, whose negligence has been one of the proximate causes of an injury, to assert that some other person not joined as a defendant in this action also participated in causing the injury. This would be true even if it should appear to you that the negligence of that other person was greater in either its wrongful nature or its effect." And further: "However, if you find that defendant was negligent and that such negligence was a proximate cause of the plaintiff's injuries, then *you must find for the plaintiff on the issue of liability*." (Emphasis added.) In the light of the foregoing, there was no reasonable possibility that the jury could have been misled into the belief that the deceased could be found contributively negligent by reason of some negligent omission or commission of the driver of the automobile in which the deceased was a passenger. It is elementary that in determining whether there was prejudicial error in the giving or failure to give specific instructions to the jury, the instructions must be considered as a whole. We have reviewed the instructions in this case in the light of that principle and, having done so, concluded that the court's instructions were eminently fair and that moreover, the trial was conducted with competence on the part of the attorneys for all parties and with admirable orderliness and impartiality on the part of the trial judge.

Affirmed.