602 P.2d 833
**Mary Lynn SHARMAN,
Plaintiff/Appellant,**

v.

**SKAGGS COMPANIES, INC., a Delaware corporation, Defendant/Appellee.**

**2 CA–CIV 3253.**

Court of Appeals of Arizona,
Division 2.

Sept. 24, 1979.

Rehearing Denied Nov. 6, 1979.

Review Denied Nov. 20, 1979.

Miller, Pitt & Feldman, P. C., by Stanley G. Feldman and John A. Baade, Tucson, for plaintiff/appellant.

Holesapple, Conner, Jones & Johnson by G. Marshall Jones, Tucson, for defendant/appellee.

## OPINION

HATHAWAY, Judge.

Appellant-plaintiff brought this personal injury action for damages in the Pima County Superior Court on January 26, 1977, alleging that through the negligence of appellee, the antenna on a television set offered for sale in one of appellee's stores toppled and struck her left eye causing injury. The cause was tried to a jury and a defense verdict was returned.

Upon denial of plaintiff's motion for new trial, this appeal followed raising three questions:

1. Did the trial court commit reversible error by allowing the curriculum vitae and the report of defendant's medical expert, whose testimony had been suppressed pursuant to Rule 26(e)(1)(B), Arizona Rules of Civil Procedure, 16 A.R.S., because of the defendant's failure timely to identify him in answers to interrogatories, to be placed before the jury for cross-examination of plaintiff's medical expert on the basis of those documents and by reading them to the witness and the jury in the course of that cross-examination?

2. Did the trial court commit reversible error in its refusal to instruct the jury on the doctrine of res ipsa loquitur?

3. Did the trial court commit reversible error by refusing to give a cautionary instruction after defense counsel stated in closing argument that "[Defendant is] not an insurance company."?

We are of the opinion that question one requires an affirmative answer and reverse.

The only expert to testify was plaintiffs' ophthalmologist, Dr. Kolker, who originally saw her on December 14, 1976, the day after the incident. Defendant's expert, Dr. Kingham, an ophthalmologist at the Arizona Health Sciences Center, specializing in diseases and injuries to the retina, examined Ms. Sharman on September 19, 1978, and on that day, defendant's attorneys filed supplemental answers to interrogatories to include the names of Dr. Kingham and other witnesses, not known when the original answers were filed July 11, 1977. Dr. Kingham spoke with plaintiff's attorney immediately after the examination. Plaintiff's motion to suppress the testimony of Dr. Kingham and the other additional witnesses on the basis of Rule 26(e)(1)(B), Arizona Rules of Civil Procedure, 16 A.R.S., as amended September 1, 1978, was filed on September 28, 1978, and granted the next day. Finding that the trial court had not abused its discretion, we declined special action relief on October 2, 1978.

Plaintiff testified at trial that she felt a sharp pain in her left eye when the antenna struck and that the pain persisted in the form of a stinging, burning, scratching and itching sensation in her eye. She stated that tears were flowing from her eye and that it was red and swollen, the eyelid was marked and her vision was blurry. Later that day, she went to see an ophthalmologist selected from the telephone directory. The doctor prescribed medication and eyedrops. The next day she contacted Dr. Kolker and advised him of her persisting eye problem. Dr. Kolker observed tenderness in the area of plaintiff's left eye, but found no visible damage. Her vision, which had previously been normal, tested normal for the right eye and 20/100 for the left. Dr. Kolker prescribed an antibiotic.

Dr. Kolker saw plaintiff again on December 17, 1976, at which time she described

the feeling in her eye as stinging and as having the sensation of a foreign body in her eye. She complained of inability to read or drive. The doctor again tested the eye for visual acuity with the same result. He examined her four days later and the left eye tested 20/200. He concluded that the plaintiff's poor vision was not correctable with a lens. Seeing nothing physically to account for plaintiff's loss of visual acuity in her left eye, although he was convinced that the tests administered accurately revealed its diminution, Dr. Kolker concluded that in view of plaintiff's history, her problem was accountable from trauma to the eyeball causing pressure to the internal workings of the eye, or through direct trauma to the optic nerve. He referred her to Dr. Novalis, an ophthalmologist specializing in the retina and diseases of the retina. Dr. Novalis confirmed that a shock to the eyeball could indirectly injure the optic nerve. Dr. Kolker's testimony alluded also to the possibility that a small blunt instrument could strike around the eyeball and directly injure the optic nerve without visible damage.

Dr. Kolker testified, upon cross-examination by defense counsel, that he did not personally know Dr. Kingham. When confronted, over objection, with Dr. Kingham's curriculum vitae, he conceded that Dr. Kingham is "a very well-qualified ophthalmologist" specializing in the retina and optic nerve and ". . . he's written various papers, book reviews, a member of various associations, had various publications, and so on, and seemed to be a well-qualified ophthalmologist." Dr. Kolker testified that he had not seen Dr. Kingham's report before. During trial, however, he apparently looked at it, but testified that it would not have affected his opinion. The following testimony, pertinent to the question before us, was elicited on cross-examination:

"Q. And would you agree that the findings hereon reported by Dr. Kingham were that essentially there was no objective evidence of any injury, or any eye problem that Mrs. Sharman has, except the reporting again by physical examinations like you did, that she didn't see any better than, in fact, 20 over 300 in the left eye. Is that what he has reported?

A. Yes.

Q. But otherwise he found nothing wrong, no objective evidence, just like you, and had found nothing really wrong to explain this?

A. That's correct.

Q. And that he reports in detail, doesn't he, his examination of her. And he did certain examinations, in fact, you didn't do, isn't that correct?

A. I don't believe he did anything I didn't do.

Q. Well, the visual field, didn't you say?

A. I did a visual field the last time, looking at this report. I have two visual field examinations, one of them recent, one of them some time ago.

Q. His was done, this was done on just a few days ago, September 20, 1978, isn't that correct?

A. That's correct.

Q. And I'm going to read you the impression and ask you if you agree with this.

MR. MILLER: Just, this is the point that I really disagree with.

THE COURT: Well, I think the record shows you disagree with it. I'll allow you to make your record later. You have a continuing objection.

BY MR. JONES:

Q. Anatomically this woman has a normal eye examination, including normal optic disc and normal retina. Both in the macula region and the retina periphery. The visual acuity confrontation visual field and the Goldmann visual field are all recorded as abnormal but these are subjective tests. And I can find no objective findings to corroborate the abnormal subjective findings.

On the basis of these examinations, and the absence of any anatomic abnormality, it would be difficult, if not impossible, for me to relate the injury of December 13, 1978, with her alleged loss of visual acuity. Would you agree with that impression?"

■ Both the curriculum vitae and Dr. Kingham's report were hearsay, being statements not made by "declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted," Rule 801(c), Arizona Rules of Evidence, 17A A.R.S., and were inadmissible under the hearsay rule, Rule 802. We find the general rule concerning cross-examination of witnesses with reference to documents not in evidence succinctly set forth at 81 Am.Jur.2d, Witnesses, Sec. 491 at 498:

"A witness may not be cross-examined as to the contents of a written document . . . which is not introduced into evidence, even though marked for identification. . . ."

■ In *Logan v. Grady,* 482 S.W.2d 313 (Tex.Civ.App.1972), defense counsel cross-examined an investigating officer on the basis of a statement given by an eye-witness. The statement was hearsay and inadmissible. The court held:

"Since the statement itself was not admissible, it follows that it was error to permit defense counsel to get into evidence the contents of such statement by way of cross-examining the witness. . . ." 482 S.W.2d at 320.

See also, *Robbins v. Small, III,* 371 F.2d 793 (1st Cir. 1967); *McKenna v. United States,* 232 F.2d 431 (8th Cir. 1956); *State v. Green,* 172 Conn. 22, 372 A.2d 133 (1976); *Robinson v. Faulkner,* 163 Conn. 365, 306 A.2d 857 (1972). Nor are we persuaded that Rule 611(b) broadens the scope of cross-examination to permit introduction of the qualifications and opinion of the defendant's expert after his testimony had been suppressed. Plaintiff points out that it would have been better to permit Dr. Kingham to testify, then, at least, plaintiff would have had the opportunity to cross-examine. The procedure followed permitted his qualifications and opinion to come in with no opportunity to cross-examine.

■ Defendant attempts to justify its use of Dr. Kingham's curriculum vitae and report in cross-examination under Rules 703 and 705. These rules do not assist defendant's position because Kingham's report was not referred to by Kolker in formulating his opinion. It was not made available to him until trial. Kingham's opinion having not been considered by Kolker in the formulation of his own, it was not admissible under Rules 703 and 705. *Wilson v. Leonard Tire Co., Inc.,* 90 N.M. 74, 559 P.2d 1201 (App.1976), cert. den. 90 N.M. 9, 558 P.2d 621 (1977); *State ex rel. Ordway v. McRae,* 122 Ariz. 325, 594 P.2d 1021 (App.1979). *Zier v. Shamrock Dairy of Phoenix, Inc.,* 4 Ariz.App. 382, 420 P.2d 954 (1966), is of no assistance to defendant, because there the testifying expert had considered the hearsay opinions in the process of formulating his own.

■ Dr. Kingham's report does not come under the learned treatise exception to the hearsay rule, Rule 803(18), which applies by its terms only to "statements contained in published treatises, periodicals, or pamphlets . . ." No evidence was presented that the Kingham report was published. Likewise, we find no basis for defendant's invited error argument. It is contended that since Dr. Kolker used in the formulation of his opinion a report from Dr. Novalis, whose testimony had also been suppressed, the use of Dr. Kingham's report cannot be the basis for reversal under the invited error doctrine. However, Dr. Novalis' opinion was not presented to the jury and his opinion was in fact relied upon by Dr. Kolker. The two absent experts, therefore, fall into different categories.

■ Defendant argues that if it was error to use the Kingham report in the cross-examination, the error was harmless because Dr. Kolker agreed with the report. We do not find this to be the case. Rather, it appears that Dr. Kolker explained that the conclusion in Dr. Kingham's report was understandable because it was based upon a

single examination of the patient. We cannot say that the Kingham report was not prejudicial to the plaintiff's case in view of his affirmative impression that the plaintiff's diminution of vision did not result from the antenna incident.

Because consideration of the first question requires that we reverse and remand for further proceedings, we will address the other two questions.

■■ The fourth element of res ipsa loquitur requires that the plaintiff not be in a position to show the circumstances of the accident. *Capps v. American Airlines,* 81 Ariz. 232, 303 P.2d 717 (1956). The record demonstrates that the plaintiff was in a position to describe the circumstances of the injury-causing incident and she did so. She testified that the defendant's manager let go of the antenna and it struck her in the eye. The manager testified that the antenna was loose and that he had placed it in an upright position before it fell. Plaintiff having introduced specific evidence of negligence, cannot invoke the doctrine of res ipsa loquitur. *Throop v. F. E. Young and Company,* 94 Ariz. 146, 382 P.2d 560 (1963); *Sanderson v. Chapman,* 487 F.2d 264 (9th Cir. 1973).

■ Defense counsel's statement that "[Defendant is] not an insurance company." does not make reference to defendant's lack of insurance, but rather seems to emphasize that defendant, as a business proprietor, is not an insurer of the premises. We do not find this statement prejudicial to the plaintiff. It is well known that the defendant operates a large chain of stores. The statement was made during oral argument and was not a part of the evidence and we find the trial court's refusal to instruct the jury to disregard the comment was not error and did not result in prejudice to the plaintiff.

Reversed and remanded for further proceedings consistent with this opinion.

RICHMOND, C. J., and HOWARD, J., concur.