949 P.2d 56

**Eugenio S. CERVANTES and Maria Cervantes, husband and wife, Plaintiffs/Appellees,**

v.

**Jacob RIJLAARSDAM and Mary Rijlaarsdam, husband and wife, Defendants/Appellants.**

**No. 2 CA–CV 97–0071.**

Court of Appeals of Arizona, Division 2, Department B.

Nov. 18, 1997.

Bess & Dysart, P.C. by Matthew D. Kleifield and Donald J. Sapala, Phoenix, for Defendants/Appellants.

McCarville, Cooper & Vasquez, P.C. by Garye L. Vasquez and Elizabeth Ryan Rueter, Casa Grande, for Plaintiffs/Appellees.

## OPINION

PELANDER, Presiding Judge.

In this personal injury case, which arises from a two-vehicle accident in February 1990, defendants/appellants Rijlaarsdam appeal from the judgment entered on the jury's verdict for plaintiffs/appellees Cervantes and from the trial court's order denying defendants' motion for a new trial and/or remittitur. Although defendants raise a number of issues, the most significant one involves their unsuccessful attempts to introduce substantive, causation-related evidence through cross-examination of plaintiffs' experts. In

order to clarify the applicable rules concerning examination of experts, we publish this opinion and affirm.

## REFERENCES TO INSURANCE

Plaintiff Eugenio Cervantes's treating physician, Dr. Erickson, testified on direct examination that plaintiff did not undergo a CT scan until eighteen months after the accident because "he didn't have any insurance and couldn't afford to have the exam done." In discussing the decision to terminate physical therapy, Dr. Erickson later testified: "Certainly in situations in this day and age with insurance companies, if someone is not making steady progress, the insurance company is not particularly anxious to continue paying for therapy." At the conclusion of Dr. Erickson's direct examination, defendants moved for a mistrial based on the doctor's references to insurance. Defendants contend the trial court erred in denying the motion.

■ We review the ruling on a motion for mistrial for an abuse of discretion. *E.L. Jones Constr. Co. v. Noland,* 105 Ariz. 446, 466 P.2d 740 (1970). Defendants contend Dr. Erickson's references to insurance were irrelevant and unfairly prejudicial. Relying on Rule 411, Ariz. R. Evid., 17A A.R.S., and their proposed corollary to the collateral source rule, defendants assert that "insurance, *whether it exists or not,* should not be a consideration for the jury." Although we agree with that general proposition, the challenged testimony does not warrant reversal here.

■ First, Dr. Erickson's testimony was unresponsive and volunteered, not willfully elicited by plaintiff's counsel, as defendants suggest.[1] Second, Evidence Rule 411 specifically applies to "insurance against liability" and does not mention health insurance; defendants' cited cases all involved a witness's reference to liability insurance, which is not the situation here. Third, even in that context, prejudice is not presumed from the improper admission of insurance-related evidence. *See Muehlebach v. Mercer Mortuary & Chapel,* 93 Ariz. 60, 378 P.2d 741 (1963). The mere mention of insurance is not automatically grounds for a mistrial. *Id.* Finally, we note that defendants did not move to strike the testimony. *Cf. State v. Hudson,* 87 Ariz. 162, 348 P.2d 928 (1960). That the jury's verdict was larger than defendants expected does not establish prejudice from Dr. Erickson's brief, uninvited remarks. Although his comments were unfortunate and arguably irrelevant, the trial court did not abuse its discretion in denying defendants' motion for mistrial.

■ In a related argument, defendants contend the trial court erred in denying them leave to cross-examine Dr. Erickson about "alternative funding mechanisms" or "other options that might be available to [plaintiff] to obtain health care treatment and to have such expenses paid." The trial court should have permitted such inquiry, defendants argue, to impeach and rebut Dr. Erickson's testimony. "A trial court's rulings on the exclusion or admission of evidence will not be disturbed on appeal unless a clear abuse of discretion appears and prejudice results." *Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982). *See also* Ariz. R. Civ. P. 61, 16 A.R.S.; Ariz. R. Evid. 103(a).

We find neither an abuse of discretion nor prejudice here. Pursuant to the trial court's curative suggestion, defendants cross-examined plaintiff about alternative methods of obtaining medical treatment and payment options. In addition, as far as we can tell from the record, defendants made no offer of proof concerning the facts they wished to elicit from Dr. Erickson on cross-examination, or from any other witness, to rebut his testimony about insurance carriers or plaintiff's lack of health insurance. In the absence of any such offer, "the trial court's ruling to exclude the evidence was not error." *Warfel v. Cheney,* 157 Ariz. 424, 431, 758 P.2d 1326, 1333 (App.1988). Contrary to defendants' suggestion, we cannot tell from this record whether Dr. Erickson could or would have "con-

---

1. Although plaintiff's counsel told the jury in his opening statement that the CT scan was not performed earlier because plaintiff "didn't have the money," plaintiff's counsel did not mention insurance in his opening statement or closing argument, and defendants did not make any motions in limine after opening statements.

firm[ed] the availability of other treatment and funding sources."

## EVIDENCE OF SUBSEQUENT INJURIES

■ Defendants next contend the trial court erred in unduly restricting their cross-examination of plaintiff's economist, John Buehler, and excluding deposition testimony of plaintiff's labor market consultant, Lisa Goldman. Those evidentiary rulings, defendants argue, effectively prevented them from "proving up" hypothetical questions they had asked Dr. Erickson about plaintiff's medical history. "It is well established in Arizona that the basis for an expert's opinion is fair game during cross-examination." *State v. Hummert,* 188 Ariz. 119, 126, 933 P.2d 1187, 1194 (1997). The right to cross-examine, however, is not unlimited. *State v. Fleming,* 117 Ariz. 122, 571 P.2d 268 (1977). "The control of cross-examination is left to the sound discretion of the trial court and will not be disturbed on appeal absent a showing from the record of an abuse of discretion." *Johnson v. University Hospital,* 148 Ariz. 37, 44, 712 P.2d 950, 957 (App.1985), *disapproved in part on other grounds, Dunn v. Carruth,* 162 Ariz. 478, 784 P.2d 684 (1989).

Based primarily on information contained in a February 1992 letter "To Whom It May Concern" from plaintiff's former employer (the letter), defendants challenged medical causation and attempted to establish that plaintiff had given Dr. Erickson an incomplete history. The letter stated that plaintiff had two unspecified injuries while working in California, in May and September 1991, both of which involved "some heavy lifting." Goldman mentioned that information in her report of June 1994, which specifically indicated she had reviewed the letter, and further stated: "While employed with [the former California employer], [plaintiff] exacerbated his back on two separate occasions during 1991 while doing some heavy lifting, requiring time off from work." Goldman also testified briefly about these matters in her deposition.

The CT scan in September 1991 revealed herniated discs at the L4–5 and L5–S1 levels in plaintiff's back. On direct examination at trial, Dr. Erickson testified that the February 1990 auto accident caused "a new structural injury," the herniations, and a permanent impairment. On cross-examination, he acknowledged that a patient's complete history is important and that plaintiff had not told him about having sustained any post-accident aggravations or re-injuries in May or September 1991. In response to defendants' hypothetical questions about those alleged injuries, Dr. Erickson indicated that if, in fact, he had not received all pertinent information about plaintiff's back condition, it "would have been nice" to have a complete and accurate medical history, and he would "need to digest [it] further." Dr. Erickson later testified that any post-accident "new injuries," if they had occurred, "would certainly be something to be considered."

### 1. Cross–Examination of Plaintiff

■ After Dr. Erickson testified, defendants attempted to introduce the information in the letter in several ways, none of which succeeded. First, defendants tried to use the letter in cross-examining plaintiff. Although defendants were permitted to question him about the letter, they were not allowed to read from it. When plaintiff denied knowledge of the letter and denied having injured his back in California in 1991, defendants impeached him with his deposition, in which he had admitted knowledge of the letter but claimed the former employer was mistaken. The trial court did not abuse its discretion in further restricting defendants' cross-examination of plaintiff through use of the letter, which clearly was inadmissible hearsay.[2]

### 2. Cross–Examination of Buehler

Second, defendants claim they should have been allowed to cross-examine Buehler on the portion of Goldman's report and deposition relating to plaintiff's alleged 1991 injuries in California because he had considered them in his financial loss analysis. The trial

**2.** Defendants implicitly acknowledged that the letter was hearsay by expressly telling the trial

court they would not offer it into evidence as an exhibit.

court sustained plaintiff's objection to that proposed inquiry, and we find no error in that ruling.

■■■ Defendants unquestionably were interested in and sought to introduce only the information reported in the former employer's letter. That evidence clearly was hearsay, because it consisted of "statements not made by 'declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted,' Rule 801(c), Arizona Rules of Evidence, 17A A.R.S., and were inadmissible under the hearsay rule, Rule 802." *Sharman v. Skaggs Companies,* 124 Ariz. 165, 169, 602 P.2d 833, 837 (App. 1979). When an expert bases an opinion on hearsay evidence, however, "the hearsay objection does not apply to the cross-examination of such expert witness." *State v. Swafford,* 21 Ariz.App. 474, 486, 520 P.2d 1151, 1163 (1974).

■■■ In computing and projecting plaintiff's earnings loss, Buehler assumed the February 1990 auto accident as the date of injury and assumed information from Goldman's report about plaintiff's earnings history and post-accident earning capacity. Buehler did not render, nor was he asked to offer, any opinions on causation. In fact, on cross-examination, Buehler admitted his task was simply to "take those assumptions and crunch numbers." Buehler further conceded that he is not a medical doctor, is not "qualified" to determine whether other injuries affected plaintiff's employability or future earning capacity, and would not address whether plaintiff "suffers from any physical condition[,] abnormality or injury because of the February 6th, 1990 accident."

Although Buehler initially indicated he had "considered" Goldman's report in "generating [his] opinions," he explained at a hearing outside the jury's presence that he had "read" but did not "consider," let alone rely on, that portion of the report defendants were interested in "because [he did not] make a judgment of why [plaintiff] can't work in the future." Rather, he relied on Goldman's report only for purposes of projecting "what [plaintiff] can earn at the present time" and testified that the portion of the report defendants were interested in was

"not part of [his] equation." When asked to assume the information in the letter was true, Buehler stated that plaintiff "may or may not" have had "another change in his working capacity" or "a completely different scenario in terms of his ability to earn money after this accident." In addition, Buehler readily acknowledged that "[y]ou can have different assumptions" that may influence the economic calculations and projections.

Defendants argued to the trial court that they were "entitled to cross-examine [Buehler] regarding anything that he considered as the basis for his opinion." On appeal, defendants broaden their argument, urging they should have been permitted to fully cross-examine Buehler on any factual information he considered, even if it did not relate to his area of expertise and even if he did not base his opinions on it. In support of their position, defendants rely on the following language from *Swafford:*

> [O]nce an expert offers his opinions he exposes himself to the kind of inquiry which ordinarily would have no place in the cross-examination of a factual witness. The expert invites investigation into the extent of his knowledge, the reasons for his opinion including facts and other matters upon which it is based and which he took into consideration and may be subjected to the most rigid cross-examination concerning his qualifications and his opinion and its sources.

*Id.* at 486, 520 P.2d at 1163. *See also Hummert.*

Defendants' reliance on *Swafford* for the broad proposition they urge is misplaced. The expert subjected to cross-examination in *Swafford,* unlike Buehler, stated "her opinion was based upon everything that she knew about the [defendants]," including her entire file. *Id.* at 485, 520 P.2d at 1162. Moreover, unlike plaintiff in this case, the defense in *Swafford* "opened the door" to the topic at issue, thereby justifying the prosecutor's full cross-examination on that topic. *Id.* at 486, 520 P.2d at 1163. In contrast to *Swafford,* defendants here were "attempting to introduce substantive evidence under the guise of impeachment." *Ford v. Industrial Commis-*

*sion,* 145 Ariz. 593, 599, 703 P.2d 537, 543 (App.1984), *approved in part and vacated in part,* 145 Ariz. 509, 703 P.2d 453 (1985). The trial court did not err in restricting defendants "from utilizing a report which had not been relied upon by [Buehler] nor properly admitted into evidence." *Id.* at 599, 703 P.2d at 543.

Through their proposed cross-examination of Buehler, defendants essentially were attempting to elicit hearsay evidence of facts for substantive purposes, when those facts were not relevant to that expert's area of expertise or opinions. Rather, the information about the alleged 1991 California injuries was relevant only to the issue of causation. Neither Buehler nor Goldman (in her report or deposition) addressed causation issues, and the record does not indicate that they were qualified or competent to render any opinions on those issues, even had they been asked to do so.

The only witness who testified about causation was Dr. Erickson. The trial court did not restrict defendants' lengthy cross-examination of him in any way. He did not testify that plaintiff's alleged injuries in 1991 from "heavy lifting" in California, if true, would necessarily change or affect his opinions on causation. Defendants did not call any expert witnesses and did not present any other evidence, through cross-examination or otherwise, to causally link the alleged 1991 injuries to plaintiff's herniated discs, physical impairment, medical treatment and expenses, lost earnings, or loss of future earning capacity.[3] Since defendants did not present or offer any evidence to establish a causal link between the alleged 1991 incidents and any of plaintiff's claims, the trial court did not err in rejecting their attempts to bootstrap admission of that evidence through Buehler and Goldman. *See Ruth v. Rhodes,* 66 Ariz. 129, 136, 185 P.2d 304, 308 (1947) ("[T]his court will not countenance 'cross-examination by insinuation' the sole purpose of which is to leave an impression with the jury of a fact or state of affairs that is not proved, or to get

before the jury by indirection that which would not be directly admissible.").

### 3. Goldman Deposition

Third, defendants claim the trial court erred in prohibiting their use of Goldman's deposition. Although plaintiff's counsel had listed Goldman as a trial witness and had told the jury in opening statement that she would testify, plaintiff apparently decided during trial not to call her. In their case-in-chief several days later, defendants sought to read the following portions of Goldman's deposition:

Q  All right.

It appears, from reading your report, that it was either related to you by Mr. Cervantes, or you obtained it from the medical documentation, but it looks like he reinjured, reaggravated his back on two separate occasions, at least, after the motor vehicle accident.

A  Correct.

Q  While doing heavy lifting.

A  I believe so.

That would have been in part from the letter I reviewed from [the former California employer].

The trial court sustained plaintiff's objection and, therefore, excluded Goldman's deposition testimony. According to defendants, the deposition excerpts were admissible under Rule 32(a), Ariz. R. Civ. P., and Rules 611(b), 703, and 705, Ariz. R. Evid. We disagree.

■ Depositions may be used at trial under Rule 32(a), but only "so far as admissible under the rules of evidence applied as though the witness were then present and testifying." With limited exceptions not applicable here, "objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying." Rule 32(b). Under Evidence Rule 611(b), "[a] witness may be cross-examined on any relevant matter." As with defen-

---

3. Defendants did not call any witnesses at trial other than defendant Jacob Rijlaarsdam. Obviously, their evidentiary and proof problems could have been alleviated by calling as witnesses

plaintiff's former California employer, an independent medical examiner, or Goldman in order to specifically inquire whether she had based her opinion on the former employer's letter.

dants' proposed cross-examination of Buehler, the proffered Goldman deposition excerpts were irrelevant because they related solely to causation-related issues about which she was not qualified to testify and on which defendants had no proof.

Evidence Rules 703 and 705 define the appropriate scope of inquiry of expert witnesses. Under Rule 703, an expert may testify about hearsay facts or data, but only so long as the expert's opinion is based on such facts or data and they are "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." Rule 705 permits an expert to "testify in terms of opinion or inference and give reasons therefor without prior disclosure of the underlying facts or data." It further provides that the expert "may in any event be required to disclose the underlying facts or data on cross-examination."

Neither Goldman's deposition nor her report indicates that the information from the California employer's letter, which she admittedly reviewed, constituted "underlying facts or data" upon which she either relied or which are "of a type reasonably relied upon by experts in [her] particular field in forming opinions or inferences about the subject." Rule 703, Ariz. R. Evid. Similarly, as noted above, Buehler did not utilize or rely on that information. In short, defendants "did not show that the facts which [they] proposed to introduce into evidence were taken into consideration by [Goldman or Buehler] in arriving at [their] opinion[s]." *State ex rel. Ordway v. McRae*, 122 Ariz. 325, 327, 594 P.2d 1021, 1023 (App.1979); *cf. Sharman*, 124 Ariz. at 169, 602 P.2d at 837 (Rules 703 and 705 do not authorize use of one expert's report in cross-examining another expert when the former's report "was not referred to by [the latter] in formulating his opinion"). That Goldman reviewed and summarized the former employer's letter in her report and then acknowledged it in her deposition, and that Buehler reviewed Goldman's report and deposition do not automatically render the hearsay evidence of the 1991 incidents admissible in the absence of a proper foundation and a showing of relevance.[4]

In addition, defendants did not establish, through hypothetical questions, offer of proof, or otherwise, how (if at all) the information in the letter, assuming its accuracy, would have influenced Goldman's conclusions about plaintiff's employability and earning capacity. Similarly, defendants failed to show how that information, if true, would have altered or affected Buehler's loss of earnings projections. Absent such a showing, we cannot say the trial court abused its discretion or committed reversible error in its evidentiary rulings. *See Foulk v. Kotz*, 138 Ariz. 159, 673 P.2d 799 (App.1983).

## NEW TRIAL

■ Finally, we find no merit in defendants' contention that the trial court erred in not ordering a new trial or remittitur. We will not overturn a trial court's denial of a motion for a new trial absent a clear abuse of discretion. *Delbridge v. Salt River Project Agr. Imp. & Power Dist.*, 182 Ariz. 46, 893 P.2d 46 (App.1994).

■ In addition to the foregoing arguments, which we have rejected, defendants' motion contended the verdict was excessive. The jury awarded plaintiff Eugenio Cervantes $182,000 in damages and zero dollars to Maria Cervantes for her loss of consortium claim. We must view the evidence in the light most favorable to sustaining the verdict and, if reasonable persons could agree with the jury's award, sustain the verdict "unless it [is] so exorbitant as to indicate passion, prejudice, mistake or complete disregard of the evidence and instructions."

4. *See Ordway*, 122 Ariz. at 327, 594 P.2d at 1023 (Rule 705 "does not give the expert witness a license to testify to any and all hearsay facts"). *See also Ferguson v. Cessna Aircraft Co.*, 132 Ariz. 47, 49, 643 P.2d 1017, 1019 (App.1981), *overruled in part on other grounds, State ex rel. Miller v. Tucson Associates Limited Partnership*, 165 Ariz. 519, 799 P.2d 860 (App.1990) ("While rules 703 and 705 of the Arizona Rules of Evidence permit the disclosure of otherwise hearsay evidence to illustrate the basis of the expert witness' opinion, they do not permit the unrelied upon opinions and conclusions of others to be introduced in cross-examination for impeachment purposes.").

*Welch v. McClure,* 123 Ariz. 161, 164, 598 P.2d 980, 983 (1979). Considering plaintiff's medical and damages evidence, we cannot say "the amount of the jury verdict is so unreasonable and outrageous as to shock the conscience." *Mammo v. State,* 138 Ariz. 528, 532, 675 P.2d 1347, 1351 (App.1983). Accordingly, the trial court did not abuse its discretion in denying defendants' post-trial motion.

## CONCLUSION

The trial court's judgment and its order denying defendants' motion for a new trial and/or remittitur are affirmed.

DRUKE, C.J., and BRAMMER, J., concur.