IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

───────────────────

TERRELL P. FADELY,
*Plaintiff/Appellee*,

v.

ENCOMPASS HEALTH VALLEY OF THE SUN
REHABILITATION HOSPITAL,
*Defendant/Appellant*.

No. 1 CA-CV 21-0478
FILED 6-28-2022
───────────────────

Appeal from the Superior Court in Maricopa County
No.  CV2017-007473
The Honorable Joseph P. Mikitish, Judge

**AFFIRMED IN PART, REVERSED IN PART AND REMANDED**

───────────────────

COUNSEL

Beus Gilbert McGroder, PLLC, Phoenix
By Timothy J. Casey
*Co-Counsel for Plaintiff/Appellee*

Law Office of Thomas M. Ryan, Chandler
By Thomas M. Ryan, Sara K. Ryan
*Co-Counsel for Plaintiff/Appellee*

Ahwatukee Legal Office, PC, Phoenix
By David L. Abney
*Co-Counsel for Plaintiff/Appellee*

Gust Rosenfeld, PLC, Phoenix
By James W. Kaucher, Charles W. Wirken, Melissa S. San Angelo
*Counsel for Defendant/Appellant*

The Checkett Law Firm, PLLC, Phoenix
By John J. Checkett
*Co-Counsel for Amicus Curiae Arizona Hospital and Healthcare Association*

Coppersmith Brockelman, PLC, Phoenix
By Roopali H. Desai, Kristen M. Yost
*Co-Counsel for Amicus Curiae Arizona Hospital and Healthcare Association*

Mick Levin, PLC, Phoenix
By Mick Levin
*Counsel for Amicus Curiae Arizona Association for Justice*

---

## OPINION

Presiding Judge David D. Weinzweig delivered the opinion of the Court, in which Judge Brian Y. Furuya and Judge Jennifer M. Perkins joined.

---

**W E I N Z W E I G**, Judge:

¶1      At issue here is the Adult Protective Services Act ("APSA"), adopted by our legislature to protect vulnerable adults from the growing evil of abuse, neglect and exploitation. APSA recognizes a private right of action for vulnerable adults to pursue civil damages for abuse, neglect and exploitation against an "enterprise that has been employed to provide [them] care." After a bench trial, the superior court determined that a hospital defendant and two non-employee physicians formed an "enterprise" to care for a vulnerable adult. The hospital defendant argues this was legal error, insisting it could not form an enterprise with the doctors because APSA exempts the doctors from "civil liability for damages." We are not persuaded. APSA's plain language includes this enterprise. We affirm the court's finding of a three-member enterprise, but reverse its apparent agency finding and remand for it to recalculate damages.

### FACTS AND PROCEDURAL BACKGROUND

¶2      On appeal from a judgment issued after a bench trial, we recount the evidence in the light most favorable to upholding that judgment. *See Town of Florence v. Florence Copper Inc.*, 251 Ariz. 464, 468, ¶ 20 (App. 2021).

2

¶3        Plaintiff Terrell Fadely had her sixth back surgery in March 2016.  She was 73 years old.  Dr. Michael Chang performed a spinal fusion at HonorHealth Scottsdale Hospital, inserting a titanium rod to permanently connect two of her vertebrae and stabilize her spine.  Plaintiff spent a week at HonorHealth to recover and was discharged with "full strength" in her legs, even able to walk with a walker.

¶4        Plaintiff was transported from HonorHealth to defendant Encompass, then called HealthSouth, an in-patient recovery and rehabilitation hospital, down the road from HonorHealth.  She picked Encompass because of its location and she had recovered there from an earlier spinal surgery.

¶5        Because Plaintiff did not identify a particular doctor to care for her, Encompass designated Dr. Christopher Barnes to be her primary attending physician.  Dr. Barnes had medical staff privileges and leased space at Encompass.  As the primary attending physician, Dr. Barnes testified, "he was required to personally monitor [the patient's] rehabilitation progress and prevent hospital complications."

¶6        Dr. Barnes examined Plaintiff the day after her admission and found her stable.  A few days later, Plaintiff complained of "sharp" and "throbbing" back pain.  She also displayed "significant" neurological decline.  But Dr. Barnes was unavailable, so a nurse alerted Dr. Atul Patel, his on-call replacement.  Dr. Patel responded to Plaintiff's hospital room, where he found a "mostly non-verbal" patient "unable to answer questions unless prodded."  He performed a minimal physical exam of the patient, which revealed symptoms "consistent with a spinal cord injury," including leg numbness and weakness and precipitous neurological decline. Dr. Patel noted that "close monitoring of neurological status will be needed."  He did not, however, perform a neurological exam or order a spine x-ray.

¶7        From there, nothing.  Plaintiff had to wait two days before Dr. Barnes examined her.  Her mind had continued to decline, and she had developed a pressure ulcer and urinary tract infection.  Like his colleague, Dr. Barnes did not perform a neurological exam or order a spine x-ray.  Nor did he call the surgeon, Dr. Chang, who Plaintiff would see for an appointment the next day.

¶8        Dr. Chang's physician's assistant ("PA") examined Plaintiff and feared a spinal cord compression.  Time was of the essence.  After a spinal cord compression, a rapid response is needed to prevent paralysis. The PA had an ambulance rush Plaintiff to HonorHealth, where she was

diagnosed with a spinal compression. Dr. Chang operated, but it was too late. Plaintiff has never walked again. She needed a tracheotomy tube for months and spent nearly two years in long-term care facilities.

¶9 Plaintiff sued Encompass in 2017, alleging abuse and neglect under the Adult Protective Services Act. She also alleged, but later dropped, a negligence claim. She never sued Dr. Barnes or Dr. Patel, individually.

¶10 After a 12-day bench trial, the superior court ruled for Plaintiff. The court found that Drs. Barnes and Patel had abused or neglected Plaintiff under APSA, awarding her $1.7 million in compensatory damages. The court did not find "Encompass directly caused Plaintiff's spinal cord injuries," but it found Encompass liable for the "actions and inactions" of Drs. Barnes and Patel because *either* (1) the doctors were the "apparent agents of Encompass," making Encompass "vicariously liable for [their] acts and omissions," or (2) Drs. Barnes and Patel were "part of Encompass'[s] 'enterprise' for providing [Plaintiff]'s care." After several unsuccessful post-trial motions, Encompass timely appealed. We have jurisdiction. *See* A.R.S. § 12-2101(A)(1).

## DISCUSSION

¶11 Encompass argues the superior court erred on multiple grounds, including its finding of secondary liability, inclusion and exclusion of evidence, and award of post-judgment interest.

### I. Secondary Liability

¶12 The superior court recognized two grounds to hold Encompass liable for the "actions and inactions" of Drs. Barnes and Patel. We address each ground in turn.

#### A. Apparent Agency

¶13 The superior court found that Encompass was liable under the doctrine of apparent agency. The court found an apparent agency "in a hospital setting" because Plaintiff looked to Encompass for treatment, not a specific physician, and Plaintiff had no choice of treating physicians. That was legal error because the superior court applied an incorrect legal standard, and Plaintiff had no evidence to meet the correct legal standard.

1.      Incorrect legal standard

¶14      The superior court confused two distinct forms of derivative liability: apparent agency and respondeat superior. *See* Martin C. McWilliams, Jr. & Hamilton E. Russell, III, *Hospital Liability for Torts of Independent Contractor Physicians*, 47 S.C. L. Rev. 431, 452 (1996) (recognizing that the doctrines of apparent agency and respondeat superior have similar appearance and effect, but their "doctrinal underpinning" is "fundamentally different"). That is, the court found an apparent agency under the law of respondeat superior. *Compare Reed v. Gershweir*, 160 Ariz. 203, 205 (App. 1989) (apparent agency), *with Beeck v. Tucson Gen. Hosp.*, 18 Ariz. App. 165, 170 (1972) ("[W]e hold that an employee-employer relationship existed between [the physician] and the hospital."), *and Barrett v. Samaritan Health Servs. Inc.*, 153 Ariz. 138, 146 (1987) (applying "well-entrenched principles of respondeat superior"). But Encompass did not employ Dr. Barnes or Dr. Patel, and Plaintiff never argued for respondeat superior liability.

2.      Correct legal standard and failure of proof

¶15      Applying the correct legal standard, Plaintiff did not and cannot prove an apparent agency, which hinges on principles of estoppel. An apparent agency is created only when (1) a principal "intentionally or inadvertently" leads one party "to believe an agency exists," and (2) the party justifiably relies on the principal's representations. *See Brown v. Ariz. Dep't of Real Estate*, 181 Ariz. 320, 326, (App. 1995) (*citing Gershweir*, 160 Ariz. at 205); *see also* Restatement (Second) of Agency § 267 (1958) (justifiable reliance).

¶16      Here, Encompass never led or misled Plaintiff to think that Drs. Barnes and Patel were Encompass agents or employees. On admission, she was provided a two-page form, titled "Consent to Treat and Conditions of Admission" ("Consent"), which was "designed to make sure [that Plaintiff had] the information [she] need[ed] to make an informed decision about being admitted to [Encompass]." And she signed the Consent, which advised her that Encompass did not control the "medical services" of independent practitioners who "practice independently under their state license and privileges granted by the hospital," "maintain sole responsibility for their medical judgment and professionalism," and "bill and collect for their services independently from the hospital."

¶17 As shown by this screenshot, the Consent also drew a proverbial line between the employees and independent practitioners who treated patients at Encompass:

> **I. Consent to Medical Treatment.** As patient, agent of patient or guarantor, I hereby consent to being admitted and treated at HealthSouth (the "Hospital"). I authorize two categories of individuals to treat me while I am a patient:
> 1. **Employees of the hospital:** These individuals include nurses, therapists and other clinicians who work under the clinical supervision of qualified and licensed clinicians who are employed by the hospital.
> 2. **Independent practitioners:** These individuals include physicians, nurse practitioners, physicians assistants, and other health care professionals, all of whom are independent members of Hospital's Medical Staff or who have been otherwise granted privileges to treat patients at the Hospital. In addition, this category includes any clinical students, residents or fellows under the supervision of these independent licensed health care practitioners. These independent practitioners are independently licensed by the state and operate according to their professional judgment and skills in the delivery of medical care to their patients and oversight to students.

¶18 Because Encompass did not represent Drs. Barnes and Patel as its employees or agents to Plaintiff, instead informing her of the independent relationship between them, Plaintiff cannot show either the representation or justifiable reliance needed for an apparent agency.

### 3. Not ambiguous

¶19 Even so, Plaintiff argues the Consent is ambiguous and thus unenforceable because the document never includes the words "agent, agency or anything directly dealing with that unique relationship," and never names the individual physicians who would care for her. This presents a question of law. *See Hartford v. Indus. Comm'n of Ariz.*, 178 Ariz. 106, 111 (App. 1994).

¶20 We are not persuaded. The Consent describes the unique relationship between Encompass and the independent medical staff, drawing a plain line between "independent practitioners" and hospital employees. In all, the words "independent" and "independently" are used in nine places. Plaintiff offers no authority that requires more. We reverse the superior court's finding that Drs. Barnes and Patel were apparent agents of Encompass.

### B. Adult Protective Services Act

¶21 Encompass also argues the superior court erroneously interpreted APSA. We review de novo the court's interpretation and application of the statute. *See In re Cortez*, 247 Ariz. 534, 536, ¶ 5 (App. 2019).

¶22 As background, APSA is strong medicine for a serious malady—a statutory elixir of criminal penalties and civil remedies, legislatively prescribed to "protect[] vulnerable adults" from neglect, abuse or exploitation. *See Est. of Braden ex rel. Gabaldon v. State*, 228 Ariz. 323, 325, ¶ 6 (2011); A.R.S. § 46-455. We broadly construe APSA's terms to achieve

the legislature's goal of protecting vulnerable adults from abuse, neglect or exploitation. *See In re Est. of Wyatt*, 235 Ariz. 138, 140, ¶ 6 (2014). APSA articulated a "central role" for state government to pursue "both civil and criminal enforcement." *See Gabaldon*, 228 Ariz. at 325, ¶ 7.

¶23 At issue here is APSA's "broad remedial cause of action against caregivers who, by means of abuse, neglect, or exploitation, endanger the life or health of a vulnerable adult." *See Delgado v. Manor Care of Tucson AZ, LLC*, 242 Ariz. 309, 313, ¶ 22 (2017). Section 46-455(B) authorizes a "vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation [to] file an action in superior court against any person or enterprise that has been employed to provide [his or her] care." A.R.S. § 46-455(B). APSA was amended in 2003 to exempt most physicians, podiatrists, nurse practitioners and physician assistants from "civil liability for damages." *Id*.; *Wyatt*, 235 Ariz. at 140, ¶ 10.

¶24 After a bench trial, the superior court found Encompass was liable under APSA for the "actions and inactions" of Drs. Barnes and Patel because they were "part of Encompass'[s] 'enterprise' for providing [Plaintiff]'s care." Encompass contends this was legal error, insisting it would be "internally inconsistent" and "absurd" to hold Encompass liable for civil damages as part of an "enterprise that has been employed to provide care" when two members of the same enterprise, Drs. Barnes and Patel, are exempt from "civil liability for damages" under APSA. *See* A.R.S. § 46-455(B).

¶25 This argument cannot withstand APSA's plain language. *See Gabaldon*, 228 Ariz. at 325-326, ¶¶ 8, 10 ("When the plain text of a statute is clear and unambiguous there is no need to resort to other methods of statutory interpretation to determine the legislature's intent because its intent is readily discernable from the face of the statute.").

¶26 First, APSA defines an "enterprise" as "any group of persons associated in fact although not a legal entity" involved in caring for "a vulnerable adult." A.R.S. § 46-455(Q). APSA never defines "person," but the legislature generally defines "person" as "a corporation, company, partnership, firm, association, or society, as well as a natural person." A.R.S. §§ 1-215(29); -211(A) ("The rules and the definitions set forth in this chapter shall be observed in the construction of the laws of the state unless such construction would be inconsistent with the manifest intent of the legislature.").

¶27 So defined, Encompass, Dr. Barnes and Dr. Patel formed an "enterprise" as a "group of persons [who] associated in fact" to "provid[e] care to a vulnerable adult." *See* A.R.S. § 46-455(Q). They worked as a "continuing unit" toward the common purpose of treating Plaintiff. *See United States v. Turkette*, 452 U.S. 576, 583 (1981) (finding an associated-in-fact enterprise under RICO's substantially similar definition where "the various associates function as a continuing unit"). Encompass cannot "care for patients without human beings," and it assigned Dr. Barnes primary responsibility to care for Plaintiff. And a formal or informal framework existed between Encompass and the doctors to discharge their common purpose. *See Boyle v. United States*, 556 U.S. 938, 942 (2009) (an enterprise must have "some sort of framework, formal or informal, for carrying out its objectives," and members who worked as a "continuing unit to achieve a common purpose") (cleaned up). Dr. Barnes and Patel could not treat Encompass's patients unless they complied with Encompass's policies, procedures and medical staff bylaws. Dr. Patel jumped in when Dr. Barnes was unavailable.

¶28 Second, APSA does not exempt Encompass from civil damages. *See Delgado*, 242 Ariz. at 313, ¶ 18 ("APSA defines a caregiver as a person or 'enterprise' employed to provide care to a vulnerable adult, and includes care provided at a nursing home or an acute care hospital."). The legislature amended APSA in 2003 to exempt most physicians, podiatrists, nurse practitioners and physician assistants from civil damages, but Encompass is none of these. *See* A.R.S. § 46-455(B); *Wyatt*, 235 Ariz. at 140, ¶ 10. Nor does APSA exempt an enterprise from civil damages when one member is exempt. *Cf. Wyatt*, 235 Ariz. at 141, ¶ 14 (rejecting argument that acute care hospitals are not liable when APSA provides no exception). The legislature could have exempted all hospitals from civil damages, but did not. *See Delgado*, 242 Ariz. at 313, ¶ 22. We will not rewrite the statute. *See id*. We affirm the court's finding that Encompass formed an enterprise with Drs. Barnes and Patel to care for Plaintiff.

## II.    Expert Witness

¶29 Encompass next challenges the exclusion of its nonparty-at-fault expert witness. The superior court "has broad discretion when determining whether a witness is competent to testify as an expert." *Gemstar Ltd. v. Ernst & Young*, 185 Ariz. 493, 505 (1996). We review the decision to exclude an expert's testimony for abuse of discretion. *State v. Bernstein*, 237 Ariz. 226, 228, ¶ 9 (2015).

¶30    To prove the standard of care in medical negligence actions with expert testimony, including civil APSA actions, Arizona law requires a "preliminary expert opinion affidavit," A.R.S. § 12-2603(B), which "determines the admissibility of medical standard-of-care evidence," *Cornerstone Hosp. of Se. Ariz. v. Marner ex rel. County of Pima*, 231 Ariz. 67, 73, ¶¶ 17-18 (App. 2012).

¶31    The proposed expert witness must have specialized "in the same specialty or claimed specialty" as the treating physician "at the time of the occurrence that is the basis for the action." A.R.S. § 12-2604(A)(1). Moreover, if the treating physician "is or claims to be a specialist who is board certified," the expert "shall be a specialist who is board certified in that specialty or claimed specialty." *Id.*; *see also Rasor v. Nw. Hosp.*, 243 Ariz. 160, 165-66, ¶ 27 (2017).

¶32    Encompass filed a notice of nonparty at fault, naming Dr. Hernan Medina, who authored the discharge summary upon Plaintiff's transfer from HonorHealth to Encompass. Encompass claimed that Dr. Medina did not disclose that Plaintiff had a spinal compression fracture. Encompass offered Dr. Scott Bolhack to provide expert testimony on the standard of care to transfer patients from acute-care hospitals to rehabilitation facilities. The superior court precluded Dr. Bolhack's testimony because he was not a hospitalist, like Dr. Medina, so "there's no foundation for [Dr. Bolhack] to testify as to Dr. Medina's care in this case under A.R.S. § 12-2604."

¶33    Encompass contends this was error because Dr. Bolhack and Dr. Medina were board certified in internal medicine, and "hospitalist" is not a recognized subspecialty. We disagree. Encompass ignores the "clear" intent of Section 12-2604, which is that an expert witness share "comparable training and experience" with the physician accused of negligence. *See Baker v. Univ. Physicians Healthcare*, 231 Ariz. 379, 383, ¶ 9 (2013).

¶34    Dr. Bolhack testified he does not work in a hospital, does not assess acute care patients for transfer to rehabilitation facilities, does not transition patients from acute care hospitals to rehabilitation hospitals, and rarely drafts discharge summaries. We discern no abuse of discretion. *See id.*; *see also Awsienko v. Cohen*, 227 Ariz. 256, 259, ¶ 13 (App. 2011) ("[T]he legislature sought to ensure that physicians testifying as experts have sufficient expertise to truly assist the fact-finder on issues of standard of care and proximate causation.").

9

## III. Medical Bills

¶35        Encompass challenges the superior court's admission of medical bills from Select Specialty Hospital ("Select"), the long-term acute-care facility where Plaintiff was transferred after Dr. Chang repaired her spinal cord compression.  Plaintiff recovered at Select for a month. Encompass argues that Select's medical bills should not have been admitted into evidence because Plaintiff never connected Select's treatment to the injury she suffered at Encompass, never proved that Select's treatment was medically necessary and never proved that Select's charges were reasonable.

¶36        We review the court's decision for an abuse of discretion resulting in prejudice.  *Cervantes v. Rijlaarsdam*, 190 Ariz. 396, 398 (App. 1997).  To admit Select's medical bills, Plaintiff needed to establish (1) a causal connection between the medical bills and Encompass's negligent conduct, (2) the treatment was necessary, and (3) the expenses were reasonable.  *See Larsen v. Decker*, 196 Ariz. 239, 243-44, ¶¶ 19-21, 24, 26 (App. 2000).

¶37        Select's office manager testified to lay the foundation for admission of Select's medical bills to Plaintiff.  She had not reviewed any itemized bills, but relied on a Medicare claim form.  Asked whether Select's treatment was medically necessary and reasonable, the office manager generally answered that Select would only bill Medicare for medically necessary treatment at reasonable expenses.  The office manager could not, however, link Select's treatments and Encompass's abuse or neglect, admitting "I wouldn't have access to that information."  She could not pinpoint which treatments addressed Plaintiff's spinal cord compression versus her preexisting comorbidities.  Thus, even if we assume the office manager satisfied the reasonable and necessary prongs for foundation, she did not satisfy the causation prong.  And because the court held Encompass liable for these bills, Encompass suffered prejudice from their admission. We reverse and remand for the court to recalculate damages after subtracting Select's medical bills.

## IV. Post-Judgment Interest

¶38        Last, Encompass argues the superior court erroneously awarded post-judgment interest on its Rule 68 sanction of prejudgment interest for Encompass's failure to accept an offer of judgment.  *See* Ariz. R. Civ. P. 68(g)(1).  An award of prejudgment interest is reviewed de novo. *Alta Vista Plaza, Ltd. v. Insulation Specialists Co.*, 186 Ariz. 81, 82 (App. 1995).

¶39     A judgment creditor is entitled to an award of prejudgment interest on a liquidated claim. *Aqua Mgmt., Inc. v. Abdeen*, 224 Ariz. 91, 95, ¶ 15 (App. 2010). "Prejudgment interest is an integral part of an applicable liquidated claim and represents past economic loss." *Id.* (cleaned up). A liquidated claim exists when "the plaintiff provides a basis for precisely calculating the amounts owed." *Scottsdale Ins. Co. v. Cendejas*, 220 Ariz. 281, 288, ¶ 33 (App. 2009) (cleaned up).

¶40     The court did not err. Its final judgment awarded post-judgment interest of 4.25% a year on a sanction of prejudgment interest under Rule 68. *See* A.R.S. § 44-1201(B). This amount, in turn, could be precisely calculated upon entry of judgment.

## CONCLUSION

¶41     We reverse the superior court's finding of apparent agency and remand for the court to recalculate damages without Select's medical bills, but otherwise affirm the judgment.

