IN THE

# ARIZONA COURT OF APPEALS

DIVISION TWO

————————————————

MARTHA EQUIHUA, PERSONAL REPRESENTATIVE OF THE ESTATE OF
JULIO PRECIADO, ON BEHALF OF THE ESTATE OF JULIO PRECIADO,
AND MARTHA EQUIHUA, PERSONAL REPRESENTATIVE, FOR AND
ON BEHALF OF JULIO PRECIADO'S STATUTORY BENEFICIARIES
PURSUANT TO A.R.S. § 12-612(A),
*Plaintiff/Appellant*,

*v.*

CARONDELET HEALTH NETWORK, AN ARIZONA CORPORATION,
DBA CARONDELET ST. MARY'S HOSPITAL,
*Defendant/Appellee*.

No. 2 CA-CV 2012-0174
Filed February 3, 2014

————————————————

Appeal from the Superior Court in Pima County
No. C20117435
The Honorable Kenneth Lee, Judge

**REVERSED AND REMANDED**

————————————————

COUNSEL

Law Office of Scott E. Boehm, P.C., Phoenix
By Scott E. Boehm

Wilkes & McHugh, P.A., Phoenix
By Melanie L. Bossie and Donna Y. Oh
*Counsel for Plaintiff/Appellant*

Mac Ban Law Offices, P.A., Tucson
By Laura V. Mac Ban and Michael L. Linton
*Counsel for Defendant/Appellee*

**OPINION**

Chief Judge Howard authored the opinion of the Court, in which Presiding Judge Vásquez and Judge Miller concurred.

H O W A R D, Chief Judge:

¶1        Martha Equihua, personal representative for the estate of Julio Preciado, appeals from the trial court's entry of summary judgment in favor of Carondelet St. Mary's Hospital ("St. Mary's") on Equihua's claim for abuse under the Adult Protective Services Act ("APSA") and wrongful death.  On appeal, Equihua argues the trial court erred in finding that her claim did not fall under the APSA and that her wrongful death claim therefore also failed. Because we find Equihua properly alleged actionable abuse under the APSA, we reverse and remand.

**Factual and Procedural Background**

¶2        On appeal from summary judgment, we view the facts and all justifiable inferences in the light most favorable to the non-moving party. *Modular Mining Sys., Inc. v. Jigsaw Technologies, Inc.*, 221 Ariz. 515, ¶ 2, 212 P.3d 853, 855 (App. 2009).  In December 2009, Preciado had a stroke and was hospitalized at St. Mary's for ten days.  The stroke caused dysphagia and put Preciado at an increased risk of aspirating, which required St. Mary's to place a feeding tube, known as a PEG tube, into his stomach.  The stroke also left Preciado dependent on caregivers for his daily needs, including personal hygiene, dressing, and eating.  After being treated by St. Mary's, he was transferred to a residential care facility.

¶3        In February 2010, Preciado was taken back to the emergency room at St. Mary's and admitted for an abnormal heart rate and head and neck pain following a fall at the residential care facility.  After he was admitted, St. Mary's administered tube feeding to Preciado for approximately 6.5 hours.  After his feeding was complete, Preciado's nurses noticed his respiratory rate had risen, his abdomen was distended, the feeding tube had a large

amount of "residual volume," and there was a "crackling" sound coming from Preciado's lungs. Later that day, Preciado went into respiratory distress and subsequently died from a pulmonary hemorrhage secondary to coagulopathy.

**¶4** Following Preciado's death, Equihua filed an APSA and wrongful death claim against St. Mary's, Preciado's residential care facility, and the nurse and physician assigned to care for Preciado at that facility. The trial court granted summary judgment to St. Mary's, concluding the APSA did not apply to Equihua's allegations that St. Mary's was negligent during Preciado's tube feeding. The court additionally ruled that because the wrongful death claim was predicated on the APSA claim, it necessarily failed as well. The trial court entered a final judgment pursuant to Rule 54(b), Ariz. R. Civ. P. We have jurisdiction over Equihua's appeal pursuant to A.R.S. §§ 12-120.21(A)(1) and 12-2101(A)(1).

## Adult Protective Services Act

**¶5** Equihua argues the trial court erred in granting summary judgment to St. Mary's because her claim falls under the APSA based on the factors enumerated in *Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 57 P.3d 384 (2002). On appeal from summary judgment, we determine de novo whether the trial court correctly applied the law and whether there are any genuine disputes as to any material fact. *See Dayka & Hackett, LLC v. Del Monte Fresh Produce N.A.*, 228 Ariz. 533, ¶ 6, 269 P.3d 709, 711-12 (App. 2012). The trial court should grant summary judgment when "the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law." Ariz. R. Civ. P. 56(a). However, we will reverse a grant of summary judgment when "the trial court erred in applying the law." *Eller Media Co. v. City of Tucson*, 198 Ariz. 127, ¶ 4, 7 P.3d 136, 139 (App. 2000).

**¶6** The APSA "provides a statutory cause of action for incapacitated or vulnerable adults who are the victims of neglect, abuse or exploitation." *In re Estate of Wyttenbach*, 219 Ariz. 120, ¶ 12, 193 P.3d 814, 817 (App. 2008); *see also* A.R.S. §§ 46-455, 46-456. The Act was intended to "protect a class of mostly elderly or mentally ill

citizens from harm caused by those who have undertaken to give them the care they cannot provide for themselves" and "increase the remedies available to and for" those elderly and mentally ill individuals. *Estate of McGill*, 203 Ariz. 525, ¶¶ 6, 14, 57 P.3d at 387-88.

¶7        As relevant here, the APSA provides that "[a] vulnerable adult whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action . . . against any person or enterprise that has been employed to provide care, [or] that has assumed a legal duty to provide care." § 46-455(B).  Abuse includes "injury caused by negligent acts or omissions."  A.R.S. § 46-451(A)(1)(b).  A vulnerable adult is defined as "an individual who is eighteen years of age or older and who is unable to protect himself from abuse, neglect or exploitation by others because of a physical or mental impairment."  § 46-451(A)(9). The parties do not dispute that Preciado was a vulnerable adult under the APSA.  *See* § 46-455(B).  Additionally, the term "care" is "generally defined as 'charge, supervision, management: responsibility for or attention to safety and wellbeing.'"  *In re Estate of Wyatt*, 232 Ariz. 506, ¶ 8, 307 P.3d 73, 75 (App. 2013).

¶8        To establish a claim for actionable abuse under the APSA, the negligent act or acts alleged "(1) must arise from the relationship of caregiver and recipient, (2) must be closely connected to that relationship, (3) must be linked to the service the caregiver undertook because of the recipient's incapacity, and (4) must be related to the problem or problems that caused the incapacity." *Estate of McGill*, 203 Ariz. 525, ¶ 16, 57 P.3d at 389.  In determining whether the APSA applies to a claim of negligence, "[t]he key fact is . . . the nature of the act and its connection to the relationship between the caregiver and the recipient." *Estate of Wyatt*, 232 Ariz. 506, ¶ 14, 307 P.3d at 76.  In her complaint, Equihua alleged that St. Mary's negligently failed to monitor Preciado's feeding tube.  The *McGill* factors must therefore be viewed in relation to those specific acts or omissions. *See Estate of McGill*, 203 Ariz. 525, ¶ 14, 57 P.3d at 388; *Estate of Wyatt*, 232 Ariz. 506, ¶ 14, 307 P.3d at 77.

¶9        Here, St. Mary's was providing care pursuant to § 46-455(B) while Preciado was its patient by undertaking various

services, including feeding Preciado via his PEG tube. *See Estate of Wyatt*, 232 Ariz. ¶ 8, 307 P.3d at 75-76. The alleged negligence in administering the tube feeding therefore arose from the caregiver-recipient relationship and was closely connected to that relationship. *See Estate of McGill*, 203 Ariz. 525, ¶ 16, 57 P.3d at 389. Next, the allegedly negligent tube feeding was not merely linked but was the precise service St. Mary's undertook because Preciado was incapacitated and could not feed himself. *See id.* Finally, that service was related to, and necessary because of, the problems that caused Preciado's incapacity—his dysphagia and history of aspiration. *See id.* Thus, under *McGill*, Equihua has met the necessary factors to maintain an action under APSA.

¶10 St. Mary's, however, argues that courts should look only to the primary reason the vulnerable adult was admitted when determining whether a claim properly falls under the APSA. St. Mary's contends it only undertook acute care services to treat the conditions that Preciado was admitted for—head and neck pain and an irregular heartbeat. Thus, it argues, the act of feeding Preciado via his PEG tube was only an "incidental accommodation[]" that does not trigger an APSA claim.

¶11 This court recently addressed whether acute care hospitals, like St. Mary's, are exempt from liability under the APSA. In *Estate of Wyatt*, 232 Ariz. 506, ¶ 2, 307 P.3d at 75, the appellee-hospital argued that acute care hospitals, as a class, were exempt from liability under the APSA. *Id.* ¶ 9. The hospital first contended that the term "provide care" in § 46-455(B) was ambiguous and therefore the legislative intent must be determined. *Id.* ¶ 7. We, however, determined the phrase was unambiguous and that a hospital provides care, or, put another way, acts as a caregiver, whenever it takes responsibility for a patient's safety and wellbeing. *Id.* ¶¶ 7-8. The hospital next argued that the legislature only intended the APSA to apply to facilities such as "assisted living centers and adult care homes, but not to acute care facilities that may have a vulnerable adult as a patient." *Id.* ¶ 9. After examining the plain language "any . . . enterprise that has been employed to provide care" and the legislative history of the APSA, we concluded that acute care hospitals, like St. Mary's, are not exempt from APSA

liability based on the fact that they primarily provide "acute care" to their patients. *See id.* ¶¶ 9, 14, *quoting* § 46-455(B).

**¶12**         Similarly, under the plain meaning of the statute, St. Mary's is an enterprise that has been employed to provide care and did provide care to Preciado. *See* § 46-455; *Estate of Wyatt*, 232 Ariz. 506, ¶ 14, 307 P.3d at 77. St. Mary's argument that undertaking "acute care" necessarily means a health care provider is not liable under the APSA is simply an attempt to re-argue *Wyatt,* and we decline to revisit the issue.

**¶13**         St. Mary's additionally argues that finding Equihua's claim falls under the APSA would lead to over-broad liability because "every person who is 'incapacitated' or deemed 'vulnerable,' who found his or her way into a hospital's emergency department for treatment of an acute injury would have a claim under APSA for any act of negligence." It asserts that such a finding would render the first two prongs of the *McGill* test meaningless. But the APSA does not "apply to any and every . . . act of medical malpractice." *Estate of McGill*, 203 Ariz. 525, ¶ 14, 57 P.3d at 388. The *McGill* test clearly delineates the necessary factors to maintain an action under the APSA, and, as discussed above, courts must look to the specific acts alleged to determine whether the APSA applies to the claim. *See id.* ¶ 16; *Estate of Wyatt*, 232 Ariz. 506, ¶ 14, 307 P.3d at 77. If Equihua alleged St. Mary's was negligent in its treatment of Preciado's head and neck injuries, such negligence would fall under the MMA, and not the APSA, because it was not linked to a service undertaken because of Preciado's incapacity, nor was it related to the problem that caused his incapacity. *See Estate of McGill*, 203 Ariz. 525, ¶¶ 14, 16, 57 P.3d at 388-89.

**¶14**         Finally, St. Mary's argues that, under *Wyatt*, any alleged negligence related to Preciado's tube feeding is not actionable under the APSA because it was only a single act of negligence. *See Estate of Wyatt*, 232 Ariz. 506, ¶ 13, 307 P.3d at 77. But our supreme court has clearly stated, "[W]e can neither automatically limit the negligent act or omission wording of A.R.S. § 46–451(A)(1) to a series of negligent acts nor say that a single act of negligence involving an incapacitated person will never give rise to an APSA action." *Estate of McGill*, 203 Ariz. 525, ¶ 16, 57 P.3d at 389. We thus reject St. Mary's argument

that it is not liable for a single act of negligence under *Wyatt* for two reasons. First, the court of appeals cannot overrule the supreme court. *Ariz. Commercial Diving Servs., Inc. v. Applied Diving Servs., Inc.*, 212 Ariz. 208, ¶ 13, 129 P.3d 497, 501 (App. 2006). Second, the court in *Wyatt* was refuting the defendant's claim that liability would be overly broad under the court's interpretation of "care" under APSA. *Estate of Wyatt*, 232 Ariz. 506, ¶ 13, 307 P.3d at 76-77. It did not address the question of whether a single act is enough. *Id.*

¶15 Equihua additionally argues the trial court erred in granting summary judgment in favor of St. Mary's on her wrongful death claim. In the trial court's ruling, it simply stated "[t]he Plaintiff's wrongful death claim is predicated on the APSA claim. If the underlying tort claim fails as a matter of law, so, too, does the wrongful death claim." Because the trial court erred in finding that Equihua's claim did not fall under the APSA, it also erred in granting summary judgment on the wrongful death claim because that ruling was predicated on its APSA ruling. St. Mary's argues alternatively that we can affirm the trial court's ruling because a wrongful death claim cannot be predicated on an APSA claim. We will uphold the trial court's ruling if it is legally correct for any reason. *Forszt v. Rodriguez*, 212 Ariz. 263, ¶ 9, 130 P.3d 538, 540 (App. 2006).

¶16 St. Mary's contends that under *In re Estate of Winn*, 225 Ariz. 275, 237 P.3d 628 (App. 2010), a wrongful death claim can never be predicated on an APSA claim. In *Estate of Winn*, the decedent's estate filed an APSA action seeking loss of life damages, but did not file an accompanying wrongful death action. *Id.* ¶¶ 1-3, 13. The court found that "[a]ctual damages in an APSA case may include pre-death pain and suffering," but did not include loss of life. *Id.* ¶¶ 8, 10. Loss of life damages could have been available, however, had the estate filed a wrongful death action. *Id.* ¶¶ 13, 15. Thus, *Estate of Winn* does not stand for the proposition that APSA claims can never be the basis for a wrongful death claim. Rather it states only that in order to seek loss of life damages, a plaintiff must file a wrongful death action in addition to an APSA claim, which Equihua did here. *See id.* ¶¶ 13, 15. Accordingly, we reject St. Mary's argument.

¶17 St. Mary's also argues that Equihua's wrongful death claim cannot stand because she "positively disavowed" any claim under the Medical Malpractice Act ("MMA"). It reasons that any claim for wrongful death stemming from a health care provider's negligence must be predicated upon an MMA claim. St. Mary's cites only A.R.S. § 12-561(2), which defines a medical malpractice action, as support for this contention. Based on this contention, it further argues that Equihua should not be allowed to amend her complaint to allege an MMA claim, thus providing a proper basis for the wrongful death claim, even though Arizona is a notice pleading state.

¶18 Equihua, however, responds that amendment of her complaint is unnecessary based on *Cornerstone Hosp. of Se. Ariz., L.L.C. v. Marner*, 231 Ariz. 67, 290 P.3d 460 (App. 2012), which was decided after the trial court's decision in this case. Equihua interprets *Cornerstone* to support the proposition that her allegations of medical malpractice were sufficient to assert a medical negligence claim, and that her claims against St. Mary's, including the wrongful death action, should be allowed to proceed as such.

¶19 In *Cornerstone*, this court found, as a matter of first impression, that statutes governing expert witness qualifications in MMA actions apply equally to APSA claims based on medical negligence. *See id.* ¶¶ 7, 14. The court concluded the plaintiff in *Cornerstone* had alleged medical malpractice in his complaint under § 12-561(2), even though the complaint purported to bring an action solely under the APSA. *Id.* ¶¶ 2, 21. The fact that claims of medical negligence and malpractice "involve a vulnerable adult and may be brought under APSA does not change their nature." *Id.* ¶ 21.

¶20 The trial court in this case correctly recognized that Equihua's "allegation against [St. Mary's] clearly sets out a claim for medical malpractice." Thus, amendment of the complaint is not the issue. *Cornerstone* was not decided until several months after the trial court's decision in this case. And the trial court has not had the opportunity to rule on any issues that may arise based on *Cornerstone.* We will not rule on an issue not properly presented to the trial court. *Airfreight Exp. Ltd. v. Evergreen Air Ctr., Inc.*, 215 Ariz. 103, ¶ 17, 158 P.3d 232, 238 (App. 2007) (trial court must be given

opportunity to address issues on merits before court of appeals can review).  Because the trial court first must have the opportunity to rule on this issue, we reject St. Mary's argument that Equihua did not properly allege an MMA action.

## Disposition

¶21      For the foregoing reasons, we reverse the order granting summary judgment in favor of St. Mary's on Equihua's APSA and wrongful death claims and remand for further proceedings.