IN THE
# ARIZONA COURT OF APPEALS
DIVISION TWO
_____

MARIKA DELGADO, PERSONAL REPRESENTATIVE OF THE ESTATE OF
SANDRA SHAW, ON BEHALF OF THE ESTATE OF SANDRA SHAW,
DECEASED; AND MARIKA DELGADO, PERSONAL REPRESENTATIVE, FOR
AND ON BEHALF OF SANDRA SHAW'S STATUTORY BENEFICIARIES
AND/OR ESTATE PURSUANT TO A.R.S. § 12-612(A),
*Plaintiff/Appellant*,

*v.*

MANOR CARE OF TUCSON, AZ, LLC, AN ARIZONA LIMITED LIABILITY
COMPANY, DBA MANOR CARE HEALTH SERVICES, INC. AKA
MANORCARE HEALTH SERVICES, LLC; HCR MANORCARE, LLC, A
DELAWARE LIMITED LIABILITY COMPANY; MANOR CARE, INC., A
DELAWARE CORPORATION; HCR MANORCARE, INC., A DELAWARE
CORPORATION; HCR IV HEALTHCARE, LLC, A DELAWARE LIMITED
LIABILITY COMPANY; HCR III HEALTHCARE, LLC, A DELAWARE
LIMITED LIABILITY COMPANY; HCR II HEALTHCARE, LLC, A DELAWARE
LIMITED LIABILITY COMPANY; HCR HEALTHCARE, LLC, A DELAWARE
LIMITED LIABILITY COMPANY; HCRMC OPERATIONS, LLC, A
DELAWARE LIMITED LIABILITY COMPANY; HCR MANORCARE
OPERATIONS II, LLC, A DELAWARE LIMITED LIABILITY COMPANY;
HEARTLAND EMPLOYMENT SERVICES, LLC, AN OHIO LIMITED LIABILITY
COMPANY; IPC THE HOSPITALIST COMPANY INC., A DELAWARE
CORPORATION; WILLIAM AMOUREUX, ADMINISTRATOR;
AND GORDON J. CUZNER, M.D.,
*Defendants/Appellees*.

No. 2 CA-CV 2015-0187
Filed June __, 2016

---

Appeal from the Superior Court in Pima County
No. C20136560
The Honorable Richard S. Fields, Judge

**REVERSED AND REMANDED**

---

COUNSEL

Law Office of Scott E. Boehm, P.C., Phoenix
By Scott E. Boehm

Wilkes & McHugh, P.A., Phoenix
By Melanie L. Bossie and Mary Ellen Spiece
*Co-Counsel for Plaintiff/Appellant*

Gust Rosenfeld, P.L.C., Tucson
By James W. Kaucher and Danielle J. K. Constant
*Counsel for Defendants/Appellees*

Cavett & Fulton, PC, Tucson
By Anne M. Fulton-Cavett
*Counsel for Defendants/Appellees Gordon J. Cuzner, M.D. and
IPC The Hospitalist Company, Inc.*

---

**OPINION**

Presiding Judge Howard authored the opinion of the Court, in which Judge Espinosa and Judge Staring concurred.

---

H O W A R D, Presiding Judge:

¶1          Marika Delgado, in her personal capacity and as representative of the estate of her sister, Sandra Shaw, appeals from

the trial court's entry of summary judgment in favor of defendants[1] (collectively Manor Care) on Delgado's claim for abuse or neglect under the Arizona Adult Protective Services Act (APSA), A.R.S. §§ 46-451 through 46-459. On appeal, Delgado argues the court erred in finding that the actions that allegedly caused Shaw's death were not related to her incapacity[2] as required by APSA and *Estate of*

---

[1] Delgado brought this action against fourteen named defendants, including a variety of LLCs that allegedly own Manor Care; an alleged individual administrator of Manor Care; Shaw's doctor at Manor Care, Dr. Gordon J. Cuzner; and the company that employs him. Cuzner asserted at oral argument that his situation should be evaluated separately from that of the other defendants. But in his Answering Brief he simply "join[ed] in the entirety of the Legal Arguments" of Manor Care without raising any arguments specific to himself. Arguments raised for the first time at oral argument are waived. *Mitchell v. Gamble*, 207 Ariz. 364, ¶ 16, 86 P.3d 944, 949-50 (App. 2004). Because they have not effectively argued otherwise, and because Cuzner and his employer have joined Manor Care's arguments, we treat all of the defendants as similarly situated for the purposes of Delgado's appeal from summary judgment.

[2] At the time *Estate of McGill ex rel. McGill v. Albrecht*, was decided, APSA applied to "incapacitated or vulnerable adult[s]." 203 Ariz. 525, ¶ 5, 57 P.3d 384, 386 (2002); *see also* 1998 Ariz. Sess. Laws, ch. 161, § 8. The current APSA has been amended to apply only to "vulnerable adults," A.R.S. § 46-455, but that term is defined as "an individual who is eighteen years of age or older and who is unable to protect himself from abuse, neglect or exploitation by others because of a physical or mental impairment. Vulnerable adult includes an incapacitated person as defined in [A.R.S.] § 14-5101," A.R.S. § 46-451(A)(9). Thus, although the language of the statute was changed, it does not appear that the amendment represented a substantive change in the scope of APSA. The court in *McGill* noted "our use of the term 'incapacitated' includes the statutory definition of both incapacitated and vulnerable adults." *McGill*, 203 Ariz. 525, n.3, 57 P.3d at 387 n.3. Because whether Shaw was incapacitated or more generally vulnerable is not at issue before

*McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 57 P.3d 384 (2002). Because we cannot say, as a matter of law, that the alleged negligence was unrelated to her incapacity, we reverse the judgment of the trial court and remand for further proceedings.

**Factual and Procedural Background**

**¶2**            "On appeal from summary judgment, we view the facts and all justifiable inferences in the light most favorable to the nonmoving party." *Equihua v. Carondelet Health Network*, 235 Ariz. 504, ¶ 2, 334 P.3d 194, 195-96 (App. 2014).  In March 2012, Shaw, who was seventy-four years old at the time, was discharged from an acute care hospital and entered a Manor Care facility.  At the time of her discharge, she had been diagnosed with incontinence, a urinary tract infection (UTI), chronic kidney disease, recent acute renal failure, anemia of chronic kidney disease, a history of coronary artery disease, hypertension, a history of an atrophic kidney, kidney stones, debilitation, a meningioma,[3] suicidal ideation, and delirium related to depression.  Shaw initially presented as "alert" but was only oriented to "place" and not "time," "person," or "situation."

**¶3**            As of April 9, Shaw was continuing to take antibiotics for her UTI, was not complaining of any particular pain, and was sleeping at long intervals.  Around this time, Shaw had a wound on her sacrum.  As of April 13, she was still on antibiotics for her UTI, and by April 16, she was able to move, with assistance, from her bed to a wheelchair.  She was scheduled to be released from the facility on May 2, when Delgado returned from a trip to Europe.

**¶4**            By April 21, Shaw presented with "some confusion" but "she [understood] and [could] make her needs known."  By April 24, she began to refuse to get out of bed, and on April 27 began to reduce "oral intake."  On April 30, Shaw presented as "[v]ery confused" and began "[t]rying to get up at intervals."  Later that

---

us, we treat the two terms interchangeably for the purposes of this opinion.

[3]Shaw had successfully undergone surgery to have the tumor removed before she was admitted to Manor Care.

day, Shaw was still "confused and lethargic" and "refused all med[icines] and meals."

¶5          Manor Care staff ordered lab tests and a urinalysis, and obtained a urine sample which was "very cloudy and milky looking." Cuzner, Shaw's treating physician, reviewed the test results and ordered an immediate chest x-ray. In the progress note associated with his assessment of Shaw, Cuzner noted "early sepsis" as the diagnosis. Later that day, Shaw was "[a]lert," and "[v]erbally responsive," but had a "very poor appetite." After receiving the results of the x-ray, Cuzner issued no new orders. Neither Cuzner nor Manor Care staff provided any further medical attention to Shaw.

¶6          On May 1, Shaw was transferred out of the "Medicare or . . . rehab wing" to the "long-term care" wing. At 11:40 a.m. Shaw presented as "lethargic" and "confused and disoriented," and Manor Care staff noted that she "[had] not eaten or taken fluids for [at] least 2 days." Nurse Jeannette Picozzi notified the Assistant Director of Nursing of Shaw's condition at that time, but no further treatment was provided. By 3:05 p.m. that day, Shaw had died, and Cuzner noted the immediate cause of death as "sepsis" which was "due to or as a consequence of" a "meningioma," "kidney stones," and "coronary artery disease."

¶7          In November 2013, Delgado filed an action against Manor Care alleging medical malpractice, wrongful death, and abuse or neglect under APSA. After discovery, Manor Care moved for summary judgment, arguing the APSA claim should be dismissed because "the alleged negligence occurred in connection with the diagnosis and treatment of an acute medical condition."[4]

¶8          The trial court granted summary judgment, ruling that "the sepsis is not related to that which caused the incapacity" and

---

[4]The motion for summary judgment also sought dismissal of Delgado's claims for wrongful death and pain and suffering associated with her medical malpractice claim. These claims were dismissed and are not at issue in this appeal.

finding that "while there may arguably be a medical malpractice case, there is no evidence of neglect or abuse." The court explained that "[a]ttention and care were well-documented, although not always successful in delivery." The court entered summary judgment, and this appeal followed. We have jurisdiction pursuant to A.R.S. §§ 12-120.21 and 12-2101(A)(1).

## Claim Preclusion

**¶9**　　　　As a preliminary matter, Manor Care argues the dismissal of the medical malpractice and wrongful death claims below "bars any claim based on negligence" due to the doctrine of claim preclusion.[5] We review questions of claim preclusion de novo. *Phx. Newspapers, Inc. v. Dep't of Corrs.*, 188 Ariz. 237, 240, 934 P.2d 801, 804 (App. 1997).

**¶10**　　　　Claim preclusion dictates that a "judgment on the merits in a prior suit involving the same parties or their privies bars a second suit based on the same cause of action." *Kadish v. Ariz. State Land Dep't*, 177 Ariz. 322, 327, 868 P.2d 335, 340 (App. 1993). Conversely, claim preclusion does not apply when "the alleged prior decision . . . was in the same action, not in a prior action." *Id.* Thus, claim preclusion does not apply here, as the APSA claim at issue in this appeal and the medical malpractice and wrongful death claims are part of the same action currently before us.[6] *See id.*

**¶11**　　　　In their notice of supplemental authority and at oral argument, Manor Care cited *Torres v. Kennecott Copper Corp.*,

---

[5]We use the more modern term "claim preclusion" over the older term "res judicata" in this opinion. The two terms are synonymous. *Howell v. Hodap*, 221 Ariz. 543, n.7, 212 P.3d 881, 884 n.7 (App. 2009); *see also Circle K Corp. v. Indus. Comm'n*, 179 Ariz. 422, 425-26, 880 P.2d 642, 645-46 (App. 1993).

[6]We further note that the same analysis would apply to any arguments regarding issue preclusion, to the extent that Manor Care makes such an argument. *See Circle K Corp.*, 179 Ariz. at 425, 880 P.2d at 645 ("'Issue preclusion' occurs when the issue to be litigated was actually litigated in a prior proceeding.").

15 Ariz. App. 272, 488 P.2d 477 (1971) and *Law v. Verde Valley Med. Ctr.*, 217 Ariz. 92, 170 P.3d 701 (App. 2007) for the principle that claim preclusion can apply to bar litigation of claims "in the same action." Both of these cases dealt with a situation where one party was only potentially liable for a claim by virtue of the other party's liability. *Torres*, 15 Ariz. App. at 274, 488 P.2d at 479 (holding that where an employer's liability rested "solely on the negligent acts of his [employee], a judgment in favor of the servant relieves the master of any liability"); *Law*, 217 Ariz. 92, ¶¶ 9-10, 170 P.3d at 704-05 (recognizing the principle that in a vicarious liability suit, a judgment for the agent is a judgment for the principal). In both cases, the court precluded claims against employers or principals once claims against their employees or agents were dismissed with prejudice. *Torres*, 15 Ariz. App. at 275, 488 P.2d at 480; *Law*, 217 Ariz. 92, ¶¶ 16-17, 170 P.3d at 705-06. These cases are thus inapplicable to the case before us.

## *McGill* **Factor Application**

**¶12** Delgado contends the trial court erroneously granted summary judgment because she succeeded in presenting a prima facie claim for abuse or neglect under APSA. "On appeal from summary judgment, we determine de novo whether the trial court correctly applied the law and whether there are any genuine disputes as to any material fact." *Equihua*, 235 Ariz. 504, ¶ 5, 334 P.3d at 196. "The trial court should grant summary judgment when 'the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.'" *Id.*, *quoting* Ariz. R. Civ. P. 56(a). "[W]e will reverse a grant of summary judgment when 'the trial court erred in applying the law.'" *Id.*, *quoting Eller Media Co. v. City of Tucson*, 198 Ariz. 127, ¶ 4, 7 P.3d 136, 139 (App. 2000).

**¶13** In order to state a successful claim for abuse or neglect under APSA, a plaintiff must show that the alleged victim was a "vulnerable adult" who was "injured by neglect[ or] abuse" by "any person or enterprise that has been employed to provide care . . . to such vulnerable adult." A.R.S. § 46-455(B); *see also Equihua*, 235 Ariz. 504, ¶ 7, 334 P.3d at 196. As it pertains here, "'[a]buse' means: . . . [i]njury caused by negligent acts or omissions," while "'[n]eglect'

means a pattern of conduct without the person's informed consent resulting in deprivation of food, water, medication, medical services . . . or other services necessary to maintain minimum physical or mental health." A.R.S. § 46-451(A)(1)(b), (6).

**¶14** Our supreme court has ruled that a single alleged act of negligence can constitute actionable abuse under APSA so long as the following requirements are met:

> the negligent act or acts (1) must arise from the relationship of caregiver and recipient, (2) must be closely connected to that relationship, (3) must be linked to the service the caregiver undertook because of the recipient's incapacity, and (4) must be related to the problem or problems that caused the incapacity.

*Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, ¶ 16, 57 P.3d 384, 389 (2002). "In determining whether the APSA applies to a claim of negligence, '[t]he key fact is . . . the nature of the act and its connection to the relationship between the caregiver and the recipient.'" *Equihua*, 235 Ariz. 504, ¶ 8, 334 P.3d at 197, *quoting In re Estate of Wyatt*, 232 Ariz. 506, ¶ 14, 307 P.3d 73, 76 (App. 2014), *vacated on other grounds* by 235 Ariz. 138, 329 P.3d 1040 (2014).

**¶15** APSA was not intended to apply to negligence that leads to injury that "can afflict anyone, not just the incapacitated" that is "completely separate from the unique role of caregiver and incapacitated recipient," such as a surgeon negligently failing "to remove an instrument or discover a perforation in the viscera." *McGill*, 203 Ariz. 525, ¶ 14, 57 P.3d at 388-89. Instead, APSA applies to situations in which the alleged negligence "is directly related to the caregiver's responsibility in caring for the incapacitated patient and is one from which that patient may not be able to protect him or herself" such as a "nurse . . . plac[ing] an incapacitated person in a bathtub, turn[ing] on the water at too high a temperature, and [being] distracted for a moment." *Id.* ¶ 15. Because in her complaint Delgado alleged Manor Care negligently had failed to furnish adequate medical care, "[t]he *McGill* factors must therefore be

viewed in relation to those specific . . . omissions." *Equihua*, 235 Ariz. 504, ¶ 8, 334 P.3d at 197.

**¶16**        Both parties rely on *Equihua* to support their contentions regarding summary judgment. In *Equihua*, the defendant, Carondelet St. Mary's Hospital (St. Mary's), had undertaken care of decedent, Julio Preciado, because of "head and neck pain following a fall." *Id.* ¶ 3. Before this, Preciado had been incapacitated by a stroke, putting him "at an increased risk of aspirating, which required St. Mary's to place a feeding tube . . . into his stomach." *Id.* ¶¶ 2-3. The stroke also left Preciado "dependent on caregivers for his daily needs."[7] *Id.* ¶ 2. While admitted at St. Mary's, Preciado died due to complications allegedly related to the administration of the tube feeding. *Id.* ¶ 9.

**¶17**        Martha Equihua, the representative of Preciado's estate, brought, inter alia, a claim under APSA for abuse or neglect, but the trial court granted summary judgment against her, "concluding the APSA did not apply to Equihua's allegations that St. Mary's was negligent during Preciado's tube feeding." *Id.* ¶ 4. This court reversed, ruling that Equihua had made a showing sufficient as to the *McGill* factors to survive summary judgment. *Id.* ¶ 9. We concluded "the allegedly negligent tube feeding was not merely linked but was the precise service St. Mary's undertook because Preciado was incapacitated and could not feed himself," and the tube feeding "was related to, and necessary because of, the problems that caused Preciado's incapacity—his dysphagia and history of aspiration." *Id.*

**¶18**        Thus, we clarified the kinds of injuries that could support an APSA claim. *Id.* ¶ 13. We distinguished the treatment of Preciado's head and neck injuries from the care he required as a result of his stroke and dysphagia. *Id.* The treatment of his head and neck constituted treatment of an acute medical condition unrelated to the problem which caused his incapacity, while care related to his dysphagia and history of aspiration was "related to,

---

[7]The parties did not dispute that Preciado was a vulnerable adult under the APSA. *Equihua*, 235 Ariz. 504, ¶ 7, 334 P.3d at 196.

and necessary because of, the problem that caused" his incapacity. *Id.* ¶¶ 9, 13. Thus, *Equihua* stands for the proposition that, under *McGill*, an APSA claim may only be maintained when the allegedly negligent acts affected the victim by virtue of their incapacity. *Id.* ¶ 13.

**¶19** Because our review is de novo, we now turn to "whether the trial court correctly applied [APSA]." *Id.* ¶ 5. On appeal, the parties do not dispute that Shaw was a vulnerable adult, and the trial court found she was vulnerable under APSA. The parties also do not meaningfully dispute on appeal that Manor Care was employed to provide care. "'[C]are' is 'generally defined as charge, supervision, management: responsibility for or attention to safety and wellbeing.'" *Id.* ¶ 7, *quoting Estate of Wyatt*, 232 Ariz. 506, ¶ 8, 307 P.3d at 75. The sole issue on appeal, pursuant to the fourth *McGill* factor,[8] is whether Manor Care's alleged failure to provide medical services was related to the problems that caused Shaw's incapacity.

**¶20** Manor Care stated that the cause of death is in dispute,[9] but the death certificate attributes her death to sepsis, which was "due to or as a consequence of" a "meningioma," "kidney stones,"

---

[8]Although Manor Care argues that Delgado could not satisfy the third *McGill* factor, this argument was not presented in their motion for summary judgment, or discussed at the hearing on summary judgment below. As a result, the trial court specifically found Delgado had failed to meet the fourth *McGill* factor. Furthermore, Manor Care briefly discusses the third *McGill* factor and does not meaningfully distinguish it from the fourth factor in its analysis. Thus, this argument is waived. *See Harris v. Cochise Health Sys.*, 215 Ariz. 344, ¶ 17, 160 P.3d 223, 228 (App. 2007) (appellant's failure to raise issue before trial court waives on appeal); *Polanco v. Indus. Comm'n*, 214 Ariz. 489, n.2, 154 P.3d 391, 393 n.2 (App. 2007) (appellant's failure to develop and support waives issue on appeal).

[9]We note that summary judgment is only proper when there are no genuine issues of material fact. *Equihua*, 235 Ariz. 504, ¶ 5, 334 P.3d at 196.

and "coronary artery disease" and Cuzner had previously diagnosed sepsis before her death. Because we view the facts in the light most favorable to Delgado, the nonmoving party, *Equihua*, 235 Ariz. 504, ¶ 2, 334 P.3d at 195-96, for the purposes of the appeal, we proceed with our analysis assuming, as Delgado contends, that Shaw died of sepsis resulting from multiple medical issues.

**¶21**     Manor Care asserts that Shaw's cause of death was an acute medical problem that was not related to Shaw's incapacity. Delgado's theory on the APSA claim is that Shaw's death was caused by Manor Care's alleged failure to provide adequate medical care for Shaw once she presented with a UTI and subsequently sepsis. Delgado specifically argues that, but for her incapacity, "[Shaw] could have sought medical treatment for herself when the infection occurred."

**¶22**     In support of her theory, Delgado presented affidavits from two experts: one from a nursing expert who addressed the standard of care for Manor Care staff, and the other a doctor who explained the standard of care for Cuzner.[10] Both experts averred that Manor Care and Cuzner had been negligent in failing to seek or provide additional medical care for Shaw.

**¶23**     The nursing expert averred that Shaw had required significant daily care, including "infection control/prevention." She further averred that one of Manor Care's duties as a care facility was to seek medical attention for its residents. And she opined that Manor Care had provided negligently substandard care when it failed to follow up with a medical professional as Shaw's condition

---

[10]In its answering brief, Manor Care correctly asserts that, under *Florez v. Sargeant*, 185 Ariz. 521, 526-27, 917 P.2d 250, 255-56 (1996), a court may grant summary judgment in the face of an expert's affidavit if that affidavit is "conclusory." Manor Care then argues the trial court properly rejected the affidavit of the doctor, Leonard Williams, M.D., on the basis it was flawed in such a way. But there is no evidence the trial court rejected Williams's affidavit in such a manner, and even if it had, summary judgment would still not have been proper for the reasons presented here.

worsened. Additionally, a staff member at Manor Care testified in a deposition that, had she been made aware of Shaw's condition, she would have wanted to secure treatment for Shaw. This evidence could allow a factfinder to conclude that Manor Care had committed abuse under APSA by failing to seek medical attention for Shaw exactly because she was incapacitated.

¶24 Furthermore, the doctor's affidavit Delgado presented also provided an expert medical opinion that Cuzner had been negligent in failing to seek further treatment for Shaw. The doctor also averred that Shaw was incapacitated and was dependent upon nursing staff for the provision of medical attention, thereby creating a triable issue of fact as to whether the alleged abuse was related to her incapacity.

¶25 Thus, Delgado presented triable issues of fact as to whether Manor Care's alleged failure to seek further medical care for Shaw was "related to the problem or problems that caused [Shaw's] incapacity." *See McGill*, 203 Ariz. 525, ¶ 16, 57 P.3d at 389. Because we cannot say that Manor Care's allegedly negligent actions were unrelated to the problems that caused her incapacity, the trial court erred by granting summary judgment in favor of Manor Care.[11]

## Disposition

¶26 Based on the foregoing, we reverse the judgment of the trial court and remand for further proceedings.

---

[11]Manor Care also argues Delgado failed to establish a claim for "neglect" under APSA. Because establishing such a claim is unnecessary to render the grant of summary judgment improper, it is unnecessary to address this argument further.