IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

MARIKA DELGADO, PERSONAL REPRESENTATIVE OF THE ESTATE OF SANDRA
SHAW, ON BEHALF OF THE ESTATE OF SANDRA SHAW, DECEASED; AND
MARIKA DELGADO, PERSONAL REPRESENTATIVE, FOR AND ON BEHALF OF
SANDRA SHAW'S STATUTORY BENEFICIARIES AND/OR ESTATE PURSUANT TO
A.R.S. § 12-612(A),
*Plaintiff/Appellant,*

*v.*

MANOR CARE OF TUCSON AZ, LLC, AN ARIZONA LIMITED LIABILITY
COMPANY, DBA MANOR CARE HEALTH SERVICES, INC. AKA MANORCARE
HEALTH SERVICES, LLC; HCR MANORCARE, LLC, A DELAWARE LIMITED
LIABILITY COMPANY; MANOR CARE, INC., A DELAWARE CORPORATION; HCR
MANORCARE, INC., A DELAWARE CORPORATION; HCR IV HEALTHCARE,
LLC, A DELAWARE LIMITED LIABILITY COMPANY; HCR III HEALTHCARE,
LLC, A DELAWARE LIMITED LIABILITY COMPANY; HCR II HEALTHCARE,
LLC, A DELAWARE LIMITED LIABILITY COMPANY; HCR HEALTHCARE, LLC, A
DELAWARE LIMITED LIABILITY COMPANY; HCRMC OPERATIONS, LLC, A
DELAWARE LIMITED LIABILITY COMPANY; HCR MANORCARE OPERATIONS
II, LLC, A DELAWARE LIMITED LIABILITY COMPANY; HEARTLAND
EMPLOYMENT SERVICES, LLC, AN OHIO LIMITED LIABILITY COMPANY; IPC
THE HOSPITALIST COMPANY, INC., A DELAWARE CORPORATION; WILLIAM
AMOUREUX, ADMINISTRATOR; AND GORDON J. CUZNER, M.D.,
*Defendants/Appellees.*

No. CV-16-0178-PR
Filed June 20, 2017

Appeal from the Superior Court in Pima County
The Honorable Richard S. Fields, Judge
No. C20136560
**REVERSED AND REMANDED**

Opinion of the Court of Appeals, Division Two
240 Ariz. 294 (App. 2016)
**VACATED**

COUNSEL:

Scott E. Boehm (argued), Law Office of Scott E. Boehm, P.C., Phoenix, Melanie L. Bossie, Mary Ellen Spiece, Wilkes & McHugh, P.A., Scottsdale, Attorneys for Marika Delgado

James W. Kaucher (argued), Danielle J.K. Constant, Gust Rosenfeld, P.L.C., Tucson, Attorneys for Manor Care

Anne M. Fulton-Cavett (argued), Cavett & Fulton, Tucson, Attorneys for Gordon J. Cuzner, M.D., and IPC The Hospitalist Company, Inc.

David L. Abney, Knapp & Roberts, P.C., Scottsdale; and Stanley G. Feldman, Miller, Pitt, Feldman & McAnally, P.C., Tucson, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

————————

JUSTICE GOULD authored the opinion of the Court, in which CHIEF JUSTICE BALES, VICE CHIEF JUSTICE PELANDER, and JUSTICES BRUTINEL, TIMMER, BOLICK and LOPEZ joined.

————————

JUSTICE GOULD, opinion of the Court:

¶1    In this case we are asked to determine what constitutes an actionable claim for abuse of a vulnerable adult under the Adult Protective Services Act (APSA), A.R.S. §§ 46-451 through -459.  We hold that such a claim requires proof that: (1) a vulnerable adult, (2) has suffered an injury, (3) caused by abuse, (4) from a caregiver.  A.R.S. §§ 46-451(A)(1)(b), -455(B).  In making this determination, we abolish the four-part test for an actionable claim set forth in *Estate of McGill ex rel. McGill v. Albrecht*, 203 Ariz. 525, 530 ¶ 16 (2002).

## BACKGROUND

¶2    Because the superior court granted summary judgment, we review the facts and reasonable inferences in the light most favorable to Marika Delgado as the non-moving party.  *See Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003).

¶3            This case arises from the death of Sandra Shaw while she was a patient at Manor Care's skilled nursing facility in Tucson. Dr. Gordon J. Cuzner was Shaw's primary treating physician at Manor Care.

¶4            After being treated at four different hospitals in late 2011 and early 2012, Shaw was discharged to Manor Care for physical and occupational therapy, as well as skilled nursing care. When Shaw was admitted to Manor Care in March 2012, she was in poor health. Shaw was suffering from several serious medical conditions, including chronic kidney disease, decreased kidney function, acute kidney failure, anemia, heart disease, and hypertension; she also had recently undergone surgery to remove a brain tumor and had a history of urinary tract infections. Additionally, Shaw was confined to a wheelchair and needed assistance with walking, bathing, dressing, toileting, transfers, and bed mobility.

¶5            Following her admission, Shaw's condition initially improved. However, by late April 2012, her condition was deteriorating. She became confused, refused to get out of bed, and began eating and drinking less. On April 30, Dr. Cuzner ordered lab tests and a urinalysis; the results indicated that Shaw had an "early" septic infection. Nonetheless, Dr. Cuzner issued no new orders or treatment for Shaw. On the morning of May 1, Shaw's condition worsened. She was confused, disoriented, and lethargic, and had not eaten or taken any fluids in over two days. The assistant director of nursing was notified of her condition, but no further orders or treatment were provided for Shaw. A few hours later, she died. The cause of death was sepsis.

¶6            Delgado, Shaw's sister and the personal representative of her estate, filed this action against Dr. Cuzner, Manor Care, and several persons and entities that allegedly owned or were related to Manor Care (collectively, "Defendants"). Delgado alleged several claims, including a claim for both abuse and neglect of a vulnerable adult under APSA. *See* A.R.S. § 46-451(A)(1)(b) (defining "abuse"); A.R.S. § 46-451(A)(6) (defining "neglect"). Manor Care and Dr. Cuzner moved for summary judgment on Delgado's APSA claim.

¶7            The superior court granted Defendants' motion. In making its ruling, the court applied the four-part test adopted in *McGill*:

> to be actionable abuse under APSA, the negligent act or acts (1) must arise from the relationship of caregiver and recipient, (2) must be closely connected to that relationship, (3) must be linked to the service the caregiver undertook because of the recipient's incapacity, and (4) must be related to the problem or problems that caused the incapacity.[1]

203 Ariz. at 530 ¶ 16. The court concluded that, under the fourth part of the *McGill* test, Shaw's death, which was "attributable to sepsis," was "not related [to the condition(s)] that [] caused [her] incapacity."

**¶8** The court of appeals reversed. *Delgado v. Manor Care of Tucson*, 240 Ariz. 293, 299 ¶¶ 25-26 (App. 2016). The court held that, under *McGill*, a triable issue existed as to whether Defendants' alleged abuse "was related to the problems that caused Shaw's incapacity." *Id.* at 298-99 ¶¶ 19, 20, 23-25.

**¶9** We granted review because the interpretation and application of APSA are recurring issues of statewide importance. We have jurisdiction pursuant to article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

## DISCUSSION

**¶10** We review de novo both a grant of summary judgment, *Andrews*, 205 Ariz. at 240 ¶ 12, and issues of statutory construction, *In re Estate of Wyatt*, 235 Ariz. 138, 139 ¶ 5 (2014).

**¶11** Defendants argue Delgado has no actionable APSA claim because she cannot satisfy the third and fourth parts of the *McGill* test. They contend that Shaw's sepsis was not "related to the problem or problems" that made her a vulnerable adult. *McGill*, 203 Ariz. at 530 ¶ 16. Rather, her sepsis was an unrelated, acute condition that developed several weeks after

---

[1] *Cf.* 2009 Ariz. Sess. Laws, ch. 119, §§ 4-10 (1st Reg. Sess.) (providing that a "vulnerable adult" includes an "incapacitated person," and amending all references in APSA to "incapacitated or vulnerable adult" to "vulnerable adult").

her admission to Manor Care. As a result, any alleged negligence by Defendants in treating Shaw's sepsis was not "linked" to the services or treatment Defendants "undertook" because she was a vulnerable adult. *Id*. To assess these arguments, we consider the Court's ruling in *McGill* and its continuing viability.

I.    The *McGill* Test

**¶12**    In *McGill*, this Court addressed whether A.R.S. § 46-451(A)(1)(b) permits an APSA claim to be based on a physician's single act of negligence. *Id*. at 526 ¶ 1. Defendants asserted that the statute, by its terms, requires multiple acts committed over a period of time. *Id*. at 528-30 ¶¶ 8-15; *see* A.R.S. § 46-451(A)(1)(b)(defining "[a]buse" as an "[i]njury caused by negligent acts or omissions"). The defendants also argued that negligence claims against physicians could not be brought under APSA because such claims were exclusively governed by the Medical Malpractice Act (MMA), A.R.S. § 12-561 through -573. *Id*.

**¶13**    In construing APSA, the Court held that "we can neither automatically limit the negligent act or omission wording of A.R.S. § 46–451(A)(1) to a series of negligent acts nor say that a single act of negligence involving an incapacitated person will never give rise to an APSA action." *Id*. at 530 ¶ 16. However, the Court expressed concern that "interpreting APSA so as to apply to any and every single act of medical malpractice would [not] be consistent with" the legislature's intent, because it would give rise to negligence claims that "can afflict anyone, not just the incapacitated." *Id*. at 529-30 ¶ 14.

**¶14**    Attempting to harmonize the statutory language and the legislature's intent, the Court formulated *McGill*'s four-part test. *Id*. at 526, 529-31 ¶¶ 1, 14-16, 21-22. This test limits a caregiver's liability under APSA, requiring a victim of abuse to satisfy all four of its requirements to assert an actionable claim. *Id*. at 530, 531 ¶¶ 16, 22.

**¶15**    The *McGill* test has proved to be problematic. The legislature enacted APSA to protect vulnerable adults, and to further this purpose, it created a broad remedial cause of action against caregivers who, by means of abuse, neglect, or exploitation, endanger the life or health of a vulnerable adult. A.R.S. §§ 46-455(B), - 455(O); *see also In re Estate of Winn*, 214 Ariz. 149, 151 ¶ 9 (2007) (APSA seeks to remedy the "evil" of abuse and neglect

of vulnerable adults, and to "protect some of society's most vulnerable persons from abuse, neglect, and exploitation."). We generally construe such remedial statutes broadly "to effect the legislature's purpose in enacting them." *Winn*, 214 Ariz. at 150 ¶ 5; *Wyatt*, 235 Ariz. at 140 ¶ 6 (same). However, the *McGill* test narrows the scope of a caregiver's liability by adding requirements not expressly contained in APSA.

**¶16** The *McGill* test has also been difficult to apply. As *McGill* recognized, "[w]e are well aware that this formulation does not provide an easy, bright-line test for judges and juries." *Id.* at 530 ¶ 17. The test is particularly burdensome when a person, such as Shaw, suffers from multiple medical conditions. Identifying which specific medical conditions render a person vulnerable, and then relating subsequent treatment and injuries to those specific "vulnerable" conditions, is no easy task. Courts navigating their way through the *McGill* test have made fine distinctions which, at times, seem to be at odds with the broad protective provisions of APSA. *See, e.g.*, *Equihua v. Carondelet Health Network*, 235 Ariz. 504, 507-08 ¶¶ 8-14 (App. 2014) (applying the *McGill* test, the court distinguished between hospital staff's negligence in treating plaintiff's head and neck injuries, which it determined were not actionable under APSA, from staff's negligence in monitoring plaintiff's feeding tube, which it determined was actionable under APSA).

## II. APSA's Requirements for an Abuse Claim

**¶17** In identifying the elements for an APSA claim, our principal guide is the statute's language. Section 46-455(B) provides that a "*vulnerable adult* whose life or health is being or has been endangered or injured by neglect, abuse or exploitation may file an action in superior court against any person or enterprise that has been employed to provide care . . . ." (Emphasis added.) Thus, an APSA claim is premised initially on whether a person is a "vulnerable adult." *Id.* A "vulnerable adult" is defined as "an individual who is eighteen years of age or older and who is unable to protect himself from abuse, neglect or exploitation by others because of a physical or mental impairment." A.R.S § 46-451(A)(9).

**¶18** APSA also requires a party to show that a vulnerable adult has suffered an "injury caused by [a caregiver's] negligent acts or omissions." A.R.S. §§ 46-451(A)(1)(b), - 455(B). APSA defines a caregiver as a person or "enterprise" employed to provide care to a vulnerable adult,

and includes care provided at a nursing home or an acute care hospital. A.R.S. § 46-455(B), - 455(Q); *see Wyatt*, 235 Ariz. at 141 ¶ 14 (APSA includes care provided at nursing homes and acute care hospitals).

¶19        Thus, by its terms, APSA identifies four requirements for an actionable abuse claim: (1) a vulnerable adult, (2) has suffered an injury, (3) caused by abuse, (4) from a caregiver.  A.R.S. §§ 46-451(A)(1)(b), -455(B).

¶20        The fact that APSA identifies the requirements for an abuse claim, combined with the difficulties accompanying the four-part *McGill* test, prompts us to reconsider the *McGill* test.  In particular, the third and fourth prongs of the *McGill* test are not found in the statute, and, when applied, have produced a great deal of confusion.

¶21        Defendants argue that if the *McGill* test is not followed, then "APSA will apply to virtually all medical malpractice cases arising from care provided to adults in inpatient healthcare institutions," including care of "acute conditions."  To avoid this potential liability, Defendants urge us to continue following the four-part test and not expand the "boundaries" set by *McGill*.

¶22        We recognize that the broad language of APSA creates considerable overlap between medical malpractice claims arising under the MMA and abuse claims under APSA.  However, we will not engage in a "narrow construction" of APSA that "thwart[s] the legislature's goal of protecting vulnerable adults."  *Wyatt*, 235 Ariz. at 141 ¶ 13.  By its terms, APSA identifies four requirements for an actionable abuse claim.  *Supra*, ¶ 19.  If the legislature wishes to limit the scope of APSA by adding the requirements of the *McGill* test, it may do so.  It is not, however, our role to rewrite the statute.  *See Ballesteros v. Am. Standard Ins. Co. of Wis.*, 226 Ariz. 345, 349 ¶ 17 (2011) (stating "[i]f the legislature desires to add [] a requirement [to A.R.S. § 20–259.01], it may do so . . .  but it is not our place to rewrite the statute").

¶23        Additionally, Defendants claim that based on the doctrine of legislative acquiescence, that the *McGill* test has been incorporated into APSA.  Specifically, Defendants contend that APSA has been amended several times since the *McGill* test was adopted and, therefore, the legislature has tacitly approved of the test.  *Cf. Madrigal v. Indus. Comm'n*,

69 Ariz. 138, 144 (1949) (discussing doctrine of legislative acquiescence); *Fisher v. Kaufman*, 201 Ariz. 500, 502 ¶ 12 (App. 2001) (same).

**¶24** We reject Defendants' argument. The doctrine of legislative acquiescence "is limited to instances in which the legislature has considered and declined to reject the relevant judicial interpretation." *SW Paint & Varnish Co. v. Ariz. Dep't of Envtl. Quality*, 194 Ariz. 22, 25-26 ¶ 21 (1999). Thus, we do not presume legislative intent when a statute is amended "in ways unrelated to the judicial construction at issue" absent "some affirmative indication the legislature considered and approved our construction." *Lowing v. Allstate Ins. Co.*, 176 Ariz. 101, 106 (1993). Here, Defendants concede that none of the subject amendments concern the definition of actionable abuse under APSA.

**¶25** We therefore disapprove the *McGill* test and hold that an actionable APSA abuse claim requires proof of the four basic elements set forth in the statute. *See supra*, ¶ 19.

III.     Delgado's APSA Claim

**¶26** Viewing the facts and all reasonable inferences in the light most favorable to Delgado, as we must, we conclude that the superior court erred in granting summary judgment in favor of Defendants.

**¶27** Shaw qualifies as a vulnerable adult. She was a frail seventy-four-year-old woman who, at the time of her admission, needed assistance in virtually every daily activity of life. There is no dispute that Manor Care qualifies as an "enterprise" employed to provide care to Shaw, and that Dr. Cuzner was her primary physician at Manor Care. Additionally, in her capacity as personal representative of Shaw's estate, Delgado properly alleges damages for Shaw's injuries. A.R.S. § 46-455(P); *In re Guardianship/Conservatorship of Denton*, 190 Ariz. 152, 157 (1997) (holding that under APSA, representatives of vulnerable adult abuse victims "may recover damages for the pain and suffering endured by the victims, notwithstanding death of the victim").

**¶28** Delgado has also presented a triable issue as to whether Manor Care abused Shaw, thereby causing her death. Delgado submitted medical records and the preliminary expert affidavits of Nurse Kathleen Hill-O'Neil and physician Leonard S. Williams showing that due to Shaw's

serious medical conditions, she could not care for herself and required close monitoring and medical attention to ensure her safety and well-being. Nurse Hill-O'Neil opines that the nursing staff at Manor Care breached the applicable standard of care by failing to notify Dr. Cuzner about Shaw's deteriorating condition and also by failing to provide necessary treatment and care as her condition worsened. *See Cornerstone Hosp. of Se. Ariz., L.L.C., v. Marner*, 231 Ariz. 67, 74 ¶ 21 (App. 2012) (holding that plaintiff's estate alleged a viable claim for APSA abuse based on allegations that the decedent received inadequate "nursing and medical services" while at defendant's long term acute-care facility, thereby causing the decedent to become dehydrated, malnourished, and develop pressure sores that became infected).

¶29 The superior court also erred in granting summary judgment in favor of Dr. Cuzner. Dr. Williams opines that Dr. Cuzner breached the standard of care by failing to properly treat Shaw's sepsis. Dr. Williams also concludes that Dr. Cuzner's breach of the standard of care caused Shaw "unnecessary pain and suffering and contributed to her death."

¶30 Dr. Cuzner asks us to address his argument that he should not be held liable irrespective of any potential liability on the part of Manor Care. However, throughout this litigation, including briefing in his petition for review, Dr. Cuzner joined in Manor Care's argument that there was no viable APSA claim under the *McGill* test because Shaw's death was not related to the conditions causing her incapacity. Thus, our analysis regarding Dr. Cuzner is limited solely to the legal and factual arguments raised by Manor Care, and we decline to address his arguments not raised below.

¶31 Defendants argue that Delgado has failed to present any admissible evidence showing abuse. Specifically, Defendants claim the superior court granted their motion to strike the affidavits of Nurse Hill-O'Neill and Dr. Williams because they were conclusory and did not establish their qualifications to testify as experts. *See* A.R.S. § 12-2603 (preliminary expert affidavits); A.R.S. § 12-2604 (qualifications for medical experts in medical malpractice claims). However, we can find no order in the record striking the affidavits. *See Delgado*, 240 Ariz. at 299 ¶ 22, n.10. Thus, we leave determination of the admissibility of these affidavits for the superior court to resolve on remand.

**¶32** In sum, on this record, we conclude the superior court erred in granting summary judgment in favor of Defendants on Delgado's APSA abuse claim. In addition, like the court of appeals, because we reverse the superior court's grant of summary judgment based on Delgado's abuse claim, we do not decide whether Delgado alleged an actionable claim for neglect pursuant to APSA. A.R.S. § 46-451(A) (6). *Delgado*, 240 Ariz. at 299 ¶ 25, n.11.

**CONCLUSION**

**¶33** Accordingly, we vacate the court of appeals' opinion, reverse the superior court's grant of summary judgment, and remand this case to the superior court for further proceedings.